The Chancellor.
By the first agreement, that of March •19th, 1840, Thorpe was to convey a lot of forty-one and a half ‘acres, as described in, the agreement; and if it fell short was ■to make up the quantity-front another lot described in the agreement ; and was to make the conveyance as soon as Hulmes should pay him $>700, with interest from April 1st, 1840, except that no interest was to be demanded on the amount that ■Ilulmes should pay in money, property, making coal and labor on or before November 1st, 1840. at which time the parties •were to settle, and Thorpe was to deliver a good and sufficient -deed, clear of all incumbrances, or as soon as half the purchase .money should be paid ; when Hulmes was to give a bond and mortgage for the balance, with interest, in two equal annual installments; Hulmes to be permitted to pay by cutting timber and making one hundred turns of coal, of one hundred bushels each, on a lot of fifty acres of Thorpe’s, called the House lot, and delivering the coal at the Russia forge: for which Thorpe was to allow $53 75 for each hundred bushels, as payment -on the land; and Hulmes agreed to deliver from sixty to one hundred loads of coal by November 1st, 1840. The two last payments were to be made in the same way, Thorpe finding timber not a greater distance from the forge than the land ho bought of Ryerson and Sharpe. Holmes was to commence delivering coal on or before September 1st, 1840, and to continue to deliver coal sufficient to keep one fire at the forge in operation. There are several minor particulars in this agreement which may be noticed hereafter.
On the execution of the agreement Thorpe delivered possession to Hulmes. It will be observed that by this agreement -Ilulmes was not required to pay half of the purchase money by ■ November 1st, 1840. He was required to deliver i'som sixty to *420 one hundred loads of coal by that day; on Which day, or as soon as half the purchase .money was paid, ‘Thorpe was to make the deed and Hulmes to give the bond and mortgage. The answer admits that Hulmes commenced delivering coal on .the 1st of September, and continued so doing up to November 1st, 1840; but says,-that Thorpe-does not believe that the ■amount delivered before that day exceeded 4250 bushels. The bill states that sixty turns, equal to 6000 bushels, were delivered before that day. There is no complaint that Hulmes did not deliver, between these periods, sufficient to keep a fire in the forge in operation; and the difference between the defendant’s* belief as to the quantity and the statement of the bill arises from Thorpe’s belief as to the number of bushels contained in ¡a turn. From the statement in the bill, 4250 bushels would make sixty loads, of seventy bushels -and a fraction each.
■The answer admits that in 1841 Hulmes continued to deliver •coal till on or before November 1st, 1841; but says that he, the defendant, does not know how much was delivered before that day, but believes it did not exceed 6400 bushels, and that he !has no means of ascertaining the quantity more definitely. The bill states that the amount delivered, in all, on or before November 1st, 1841, was 9150 bushels, amounting at the stipulated price, to $34-3 12-?.-; and that before Noveifiber 1st, 1840, the .complainant had an account against the defendant, for work and labor, oats, and the .use of the barn, .amounting •to $17; and .that on the 1st of November, 1841, he had a further account against the defendant, and that these .accounts, .added to the coal delivered before November 1st, 1841, amounted to $350, the half of 'the purchase money, and the interest due by the terms of the .contract.
The defendant admits that on the 1st of November, 1840, be •was indebted to Hulmes for work and labor, but not exceeding three dollars; and says ;he is unable to state the amount more definitely; and that, before that day, he had procured from Hulmes ten bushels of .oats, for seed, on the understanding ¡and agreement that.the same quantity should be furnished to Hulmes in the spring of 1841, for seed or otherwise; and that before November, 1840, he hired of Hulmes half his barn for five dollars, to be paid April 1st, 1841; ¡and that he believes .that com *421 .plainant’s accounts against him, except for coal, did not exceed /fifteen dollars; and that he has no means of ascertaining the .amount more definitely. Thorpe admits that he left the state, ffor the state of Illinois, about the 1st of November, 1840, but says he cannot state more definitely -the day he left. I am satisfied, from the answer and the testimony, that he left before the 1st of November, 1840. In March, 1841, Thorpe returned to this state, and Hulmes went on to deliver coal in the season of 1841, as before stated.
The bill states, that on the 23d of November, 1841, the complainant offered to give the bond and mortgage, according to the contract, on Thorpe’s giving the deed; and that Thorpe •refused to do so, but offered a deed .executed by him alone, and not by his wife, and which was also defective in the description; and that the complainant, for these reasons, declined taking -the deed; and that the complainant has frequently requested Thorpe to perform, and offered .to perform on his part, if Thorpe would comply on his part.
Thorpe admits that he offered Hulmes a deed for the premises, executed by him alone, and also defective in the description, and that Hulmes refused to receive it, on the ground of ,-the defective description; and says that this was on or about November 1st, 1841; but he says he does not recollect whether .or not, and does not believe that Hulmes .refused to receive the deed on the ground, or alleged that the .defendant had a wife who ought to execute the dee'd. The answer further says, that, on the 7th of July, 1842, the complainant, with his, the defendant’s consent, caused a deed to be prepared for the purpose ■of sending it to Indiana, .to be executed by one Annis Thorpe, formerly his wife, .and that he sent it accordingly; but that he did so, not in compliance with , any tíbligation onihis part, but ■only to satisfy the complainant. He says that on the 14th of September, 1843, since the filing of the bill, he received, by mail, ■the said deed, executed and acknowledged by the said Annis, and that he showed it to the complainant on the 16th of October ; and he admits that the said deed, or ¡any other deed executed by the said Annis, was never, before the filing of the bill, .offered to the complainant, though he says that on said October ;16th he offered to .deliver (the said deed to the,complainant, with *422 ■ a proper deed executed.by him, and requested the.complainant ,ia -pay the money due him on the agreement. He says that said Annis deserted him on or about December 1st, 1836, &c.
He says that on or about January 14th, 1843, he delivered to the complainant, in the street near the complainant’s .house, a ■notice to fulfil the contract or give up possession; and requested him to receive a deed for the premises ; and that, at that time, he tendered a deed duly executed and acknowledged by him, giving a correct description of the premises, and containing the usual covenants, and sufficient, as he is advised and believes, under the said' agreement"; .and that .he informed the complainant of the .contents thereof, and that the complainant might have seen the same if he had ■ chosen to do so; and that he thereupon requested the complainant to perform on his part. 'He admits that, on that occasion, the complainant asked him, and Webb who was with him, to walk with .the complainant into the house; but denies that the complainant said he would arrange the business then. He admits, that on the 28th of July, 1843, the complainant requested him to deliver a deed, and insisted ¡that the agreement required the conveyance or release of Annis Thorpe; and that he, the defendant, replied, that ,he was,not and never would be prepared to give a deed executed by the said Annis; and stated ¡that he had no wife, entitled to dower; and that he thereupon -offered .the complainant a deed duly executed and acknowledged ¡by him, on the payment of the money due, and the execution of the bond and mortgage. He admits that he has insisted, and he now submits, that after .the lapse of time which has occurred, the consideration mentioned in (the contract should be paid in money. He says, that .¡on or about July 1st, 1842, the complainant, for the first .time, ,as Jar as he recollects and as he believes, declared .he would ,not.comply unless he, Thorpe, would procure a deed executed .by said Annis, and insisted that .the agreement required such a .deed ; and the defendant insists that mo such deed was requir- .. ed by the agreement.
Among the-exhibits on the part .of-the defendant is a deed, dated July 7th, 1842, .between Thorpe of the first part, and Hulmes .of the second, purporting to have been executed by Annis Thorpe, by her .mark, with a certificate of a justice o.f *423 the peace of Indiana annexed, that Annis Thorpe, wife of Moses Thorpe, acknowledged, &c. (in tho usual form of acknowledgment by a married woman.) This certificate is dated August 18th, 1843. There is also annexed to this deed a certificate of the mayor of Madison, in Indiana, dated April 16th, 1844, that on that day Annis Thorpe acknowledged, &.c. (in the usual form) that she executed the deed, stating that she had acknowledged it before, and that she understood the fust acknowledgment was illegal in New-Jcrsey.
From the case as thus far developed, it seems to me to be plain, that the complainant is entitled to a specific performance of this agreement. Be has performed a valuable part of the contract, and so far as yet appears, is in no default as to the performance of the residue, unless his declining to take a deed without the execution of it by Thorpe’s wife is a default.
The question whether the court will decree that a husband shall procure his wife to join in a conveyance has been spoken to in this case. If it appears that the wife objects, I do not see how the court can make such a decree. If a vendor ask specific performance of an article like this, stipulating for a good and sufficient deed, clear of all incumbrances, the court would not compel performance by the vendee, unless the wife joined in the deed. And where the vendee asks performance, and it appears satisfactorily that the wife of the vendor refuses to join, the result would only be that the vendee would have his election, to take a deed without the wife’s signature, or resort to his action at law for breach of the agreement. But in this case it is contended, on the part of the vendee, that inasmuch as it appears that the wife is willing to execute the deed, her willingness having been shown by her twice acknowledging the deed so as aforesaid exhibited, there can be no objection to a decree that a deed be given by Thorpe’s wife.
According to the doctrine of this court, a decree that a thing be done puts the party in the same position as if it was actually done, though it be refused. It may be that the wife’s acknow-. iedgment of the deed in this case should be considered as equivalent to her express consent to execute it, and that on thi® ground the court would be justified in making a decree that Thorpe deliver a deed executed by him and his wife. But it *424 Would be safer for the’ court to decree the delivery of the deed’ already executed by her, and perhaps it would be safer for the' complainant1.
As to the difference Between the' parties in reference to the' amount of the coal delivered and the'accounts of Hulmes and Thorpe on the' 1st of November, 1841, it is very small; and even if there was a slight deficiency, it would not' prevent a-decree; for the difference could be compensated in money. But in this case it seems to me that the cbmplainant honestly thought and still thinks, that the coal delivered and his accounts against Thorpe for property and work and labor, under' the terms of the agreement, amount to the sum-, on the payment of which he was to have the deed.
It was admitted* in argument, that if Hulmes put himself on the ground that he had paid half, and would do no more till he got the deed, and the proof sustained him,.his position would Be good.- Thorpe bad gone to Ill-inbis before November 1st,-1840, and the settlement contemplated by the agreement to be made at; that time could- not be made ; and there is evidence, I think, sufficient to- show that Hulmes went to Thorpe’s that day for the purpose of making such settlement.
Again, the bill states, that on the 23d of November, 1841, the complainant offered to give the bond and mortgage, according to the contract, on Thorpe’s giving the deed;'and that1 Thorpe offered a deed executed by him alone, and also defective in the description, which Hulmes, therefore, refused to accept. The defendant admits that about the 1st of November, 1841, he offered such a deed, and that Hulmes refused it. No objection was then made by Thorpe that Hulmes was not entitled to his deed because he had not paid half. No settlement was asked by Thorpe, to see if Hulmes had paid half; but a deed confessedly defective was offered. If a good deed had been offered, a settlement might then have been gone into; and if it had appeared that Hulmes had not paid half he could have-paid the balance of the half in money.
The answer admits, that in or about March, 1842, the complainant called on the defendant and requested him to furnish the timber from which to make more coal, insisting that he had ■already made coal to the extent alleged in the bill, which the- *425 defendant says lio did not then and does not now admit. 'Why was not a settlement then gone into as fo what amount had been delivered ? Did the defendant then deny the complain‘ ant’s statement? There is no evidence that he did.
Again, the defendant says that on the 14th January, 1843, in the street near the complainant’s house, he tendered a deed executed by him, giving a correct description, and informed the complainant of the contents thereof; and that complainant might have seen it, if he had chosen; and that he thereupon requested the complainant t,o perform on his part; and he admits that on that occasion the complainant asked him to walk into the house, and that he refused to go in. Here was another proper occasion for a settlement as to tho amount that had been paid ; and if it had turned out that Holmes liad not fully paid the half, he could have paid the balance in money.
Again, the defendant admits, that on. the 28th July, 1843, the complainant requested a deed, and insisted on a deed executed by Annis Thorpe: and that he replied that he never would be prepared to give such a deed, and tendered a deed executed by him. Wo difficulty seems to have been made at any time as to tho amount that had' been paid. Hulmes claimed that he had paid the half; and 1 see no reason to doubt that if there had been no difficulty about the deed, and on a settlement at any of these periods it had appeared that there was still due a balance on the halfj Hulmes would have paid it in money. I think that Hulmes is in no such default in this respect as should induce the court to deny him a specific performance. The case, in this part of it, as to the general question whether performance should be decreed, must stand on the same ground as it would if Hulmes had confessedly paid the half.
There is no difficulty arising from lapse of time in this case. The' agreement was made in March, 1040, and the bill was filed in August, 1843. And I see no such change of circumstances aa should induce the court to refuse a decree. It would occupy too much time and space to examine particularly the complaints of the defendant as to the alleged minor defaults of the complainant, and the testimony respecting them. The items in reference to which the defendant complains that tho *426 complainant did' not perform the contract are, that the greater part of the stamps were not cut low; that the coal was not made as good as the timber and season would allow; that, as near as he can state, and as he believes, a quarter of the coal not worked off the bank at the forge was not stocked; that the complainant did not cut and draw to the mill all the saw logs, though he admits he cut and drew a large proportion of them. The defendant denies that the' complainant was ready or willing to saw the logs and deliver half thereof, stuck, at «any time prior to December, 1842; and says that during the years 4841 and 1842, he frequently requested the complainant to draw and saw them, and directed him into what stuff to saw them. That in March, 1842,• he directed the complainant to saw timber for a small frame house, according to a bill to be furnished by De Wolf; and that he is-informed and believes that the bill was furnished in May or June, 1843/ He admits that except this he has not given the complainant any directions as, to the sawing- of the logs. He" says that the water in the stream has'been at all times sufficient, since March, 1843; to drive the mill and saw all the timber.
No such default in any of these-respects is'shown as should prevent a decree fpr performance. A slight variation or default is not important if the difference is a proper subject of compensation-in money: 2 Moll. 588; 7 Monro, 142. And as to all these matters, I think the weight of testimony is so strongly ia favor of the complainant, that I should be unwilling to delay the cause with- a view of ascertaining whether the complainant-, before a decree should be-made for- the specific performance of the agreement, should not make compensation for defaults in some of-these particulars.- Again, the-defendant; after all these alleged defaults, offered to deliver a deed executed by himself.
The second article was an agreement to convey for a money consideration uf $1200; $100 of which was paid on the execution of the article; and the balance- of w.hich was to be paid as- follows: $100 November 1st, 1841,, when Thorpe was to make a good and sufficient warrantee-deed, clear of all incumbrances, and Hulmes-was to give his five bonds, for $200 each,!, payable on the 1st November in each of the five following yearst, with.-interest,..and a-mortgage on-the premises,, executed by.him! *427 and his wife, to secure the same. On the execution of this agreement and the payment of $100, Thorpe delivered possession to Hulmes. On the 23d November, 1841, Hulmes paid the second $100, and Thorpe received it as of the 1st November, 1841.
The bill states, that on paying the second $100 Hulmes offered to give-the bonds and mortgage, on Thorpe’s giving the deed; and that Thorpe offered a deed executed by him alone, and not by his wife, anti which was also defective in the description and that Hulmes, for these reasons, declined taking •the deed. Thorpe admits that on or about November 1st, 1841, he offered Hulmes a deed for the premíeos, executed by him alone, and also defective in the description, and that Hulmes declined receiving it on the ground of the defective description; and the defendant says he does not recollect whether or not, and does not believe that Hulmes refused it-on the ground, or alleged that-the defendant-had a wife who ought-to execute the, deed.
Thorpe says, that on or about, July 1st, 1842, the complainant for the first time, as far as he recollects and as he believes, declared he would not comply unless he, Thorpe, would procuro a deed executed by the said Annis, and insisted that the agreement required such a deed. He says that on the 14th January, ■1843, he tendered to the complainant, in the street near the -complainant’s house, a deed duly executed and acknowledged by him, giving a correct description of the premises, and informed the complainant of the contents thereof; and that the complainant might have seen it if he had chosen to do so; and that he thereupon requested the complainant to perform on -Ms. part. He admits, that on that occasion the complainant asked him -and Webb, who was with him, to walk into the house, as stated in the bill; but denies that the complainant said he would arrange their business then, as stated m'hhe bill
It, thus appears-that it was not till January 14th, 1.843, that Thorpe offered a deed with a correct description. The bill states, that on the 28th July, 1843, the complainant tendered t© Thorpe $221, being the $200 and interest thereon for which the first bond was to be given, and four bonds and a mortgage, according Jo the terms of the agreement, and thereupon re *428 quested the deed; and that Thorpe replied that he was not and never would be ready to give a deed executed by his wife. The .defendant admits that on that day the complainant requested a deed, and insisted that the agreement required the conveyance or release of the said Annis; and that he made the answer stated in the bill. And he admits, that on that day the complainant stated that he then and there had $221, as the amount of the second payment and interest thereon, and the four bonds and m'ortgage, as stated in the bill; and says.that he thereupon requested the complainant to allow him and another person .to count the money and examine the papers; and that the complainant refused to allow him and such other person to do so.; and he denies that the complainant otherwise offered to perform, .or otherwise tendered, esc.; ..and says he has no knowledge or [information of the contents of the paid papers, except from the statement of the complainant; and that if they were tendered, .they were not, with the said money, a sufficient compliance with the agreement; and that he was not bound"to accept thein._
He says, that on the 7th July, 1842, the complainant, with ;his consent, caused a deed to be prepared for the purpose of .sending it to Indiana to be executed by the said Annis; and .that he, at complainant’s .request, immediately sent it; that he did so, not in compliance with any obligation on his part, but solely as a.gratuitous act, at complainant’s request, and to satisfy him. That since the bill was filed, he received the deed, executed and acknowledged .by the said Annis; and he admits that no deed executed by the said Annis was ever offered to the complainant before the filing of the bill. This is the same deed spoken of and described in that part of this opinion which relates to.the first agreement; it being, or purporting to be, a conveyance, in one deed, of the lands described in both agree.ments.
The statement of. the foregoing.facts in reference to the second .agreement is sufficient, I think, to show clearly, that there is nothing in the way of the relief sought by.the bill as to this agreement, except .the difficulty as to the form of the decree growing out of the fact that the defendant has a wife. In reference to this, the view taken in considering the course to be .adopted on the first agreement applies here.
*429 I am of opinion that, in reference to both contracts, the com.plainant is entitled to the relief he seeks. What mode shall be prescribed for the performance, on the part of the complainant, of the first agreement ? it is said that in suits for specific performance the court may modify the agreement so as to do justice, if circumstances require it: 1 Peters, 376. I do not see that justice, in this case, requires any modification except as to time, nor does it appear that the circumstances of the defendant, in reference to the stipulations of the agreement, are so changed as to require a difieren! mode of payment from that contracted for by the complainant.
There is no reason to believe, from any thing appearing in the case, that the defendant has not timber land within a proper distance from which to make coal. We are relieved, therefore, from the difficulty winch might have been presented if the defendant, since the agreement, had sold his timber lands. And as to time, if the complainant is to perform by making coal, one and two years would be reasonableand if money payments are to bo substituted, the same time would be reasonable. In decreeing performance the court may give a day or prescribe equitable conditions: 1 A. K. Marshall, 162.
The complainant could not tender in money under this contract ; but the defendant submits, in his answer, that if performance be decreed, the decree should direct the payments to ¡be made in money. I do not feel satisfied, under the evidence in the case, to give such a direction against the consent of the complainant; but it might prevent much future trouble and vexation to the parties, and perhaps to the court, if the complainant will consent to it.
A reference to a master will be necessary, to ascertain whether there is any balance due Thorpe for the half of the consideration on the first contract. If there is, that balance .should ho paid in money.
Decree for complainant.