## BRINKERHOFF vs. BRINKERHOFF.

1. A conveyance to a wife of her husband's property, made in pursuance of a family arrangement, after consultation, and with the approbation of the husband's mother, will not be set aside in favor of a judgment confessed by the son to the mother more than seven years after the conveyance, for claims alleged to have been in existence before the conveyance, but which she did not then mention, but allowed the settlement to be concluded and acted on.

2. A court of equity will not aid one against another who has been misled by the conduct of the former, to his prejudice.

Argued before the Vice-Chancellor, on bill, answers, and proofs.

*Mr. T. N. McCarter* and *Mr. L. Zabriskie*, for complainant.

*Mr. Williamson*, for defendants.

THE VICE-CHANCELLOR.

The complainant's suit is against her son and his wife, but the controversy is between the mother and her daughter-in-law, the son co-operating with the mother in the object of the suit, which is to set aside a conveyance of his lands, made through a third person, by himself to his wife.

The complainant, Jane Brinkerhoff, is the widow of Cornelius Brinkerhoff, who, in 1850, died seized of considerable real estate in the county of Hudson, which, in 1857, was partitioned in the Orphans Court between the two children of the intestate, Cornelius and Eleanor, subject to the widow's dower.

Cornelius was married in 1857, and began soon after to sell portions of his land, for which his mother executed releases—one dated September 1st, 1858, for the consideration of $4333.33; another, April 30th, 1860, for $4666.66; and another, July 6th, 1860, for $2000.

By deed of December 7th, 1863, Cornelius conveyed to his father-in-law, George C. Perry, all his remaining lands, and on the same day Perry and wife conveyed the same lands to his daughter, Cornelius' wife. Two of the lots, forming but a small part of the premises so conveyed, were parcels of the land set off to him in the division of his father's estate; the remainder and larger part had been bought by himself, or taken in exchange. In the two inherited lots the widow still has her dower.

In January, 1870, Cornelius confessed judgment to his mother, for $18,826.07, the amount claimed to be due for the principal and interest of the consideration moneys in the three above mentioned releases. No property was found by

the sheriff, whereon to levy the execution issued on the judgment, and it is sought in the present suit to collect the same out of the lands conveyed to the wife. The bill charges that the deeds to Perry and his daughter were voluntary, and without any consideration being paid for them; that the deeds conveyed all the property Cornelius then owned, and as against the complainant, who was his creditor, are utterly void. It prays that the deeds may be set aside as fraudulent, or that the lands may be decreed to be liable to be taken to satisfy the judgment and costs.

By an order of the court the defendants have answered separately, the son admitting the charges of the bill, the daughter denying them and setting up matters of defence. The questions presented by the pleadings and proofs are: *First* — Is the confessed judgment *bona fide* and valid? *Second*—If valid, is the complainant precluded by her conduct from enforcing it against the property in dispute?

The defendants at their marriage were young; he but little more than twenty-one, without any business or trade, and with no income to support him. He went to his wife's father's to live, and for the most part led an idle and dissipated life, addicted to drink, contracting debts, and running through his property. His father-in-law died in 1865, and from the evidence appears to have endeavored, from his daughter's marriage to his death, to benefit his son-in-law and prevent his property from being squandered. Eleanor, the sister of Cornelius, was married in 1862 to William Speer, in whose family the complainant has since lived. The conveyance to the wife of the premises in dispute, appears to have been made upon a family consultation, and as an advisable family arrangement. The defendant, Sarah, testifies that the complainant knew all about it, and was consulted in regard to it. She says: "My father and Cornelius consulted Cornelius' mother about it. After I received the protest from the bank, I went to Cornelius' mother and spoke to her about this note; told her he was in debt. While we were standing talking in the court yard, William Speer came in the gate;

he asked what was the matter. I told him. He said Cornelius was over head and heels in debt; he owed John Lamb a bill. He says the only way for you to do, will be to get what property is left put into your hands. Cornelius' mother replied, it is too bad he never could take care of his property; I don't know what he would do without your father. This was in October, as the deed was made in December, 1863; it was the time we received Mr. Sisson's protest."

This statement is not denied by the complainant, or by Speer; both of whom were present when it was sworn to, and one of whom was examined as a witness.

After the death of the father-in-law, Perry, in 1865, Cornelius and wife lived with the mother of the latter till 1869, when he went with his wife to New York, where she kept house, to get away, as she says, from the liquor dealers who were following him for payment of their bills. The same difficulty seems to have been experienced there, when at the close of the year he became alarmed by the threats of his creditors, and went back to Jersey City to the residence of Speer. Soon after, and on the 7th of January, 1870, the confessed judgment to his mother was entered, for $18,826.07. The affidavit was made by Speer, and asserts the consideration of the judgment to be the three several sums mentioned in the releases, with lawful interest from the times they were due.

It is difficult to believe that the whole of this sum was unpaid and owing at the date of the judgment. The complainant and her son both testify positively that it was. The defendant Sarah testifies positively that she had several times heard the complainant say to her father that her dower rights had been paid for. She testifies also that some of the purchase. moneys named in the releases were paid, to her own knowledge, and gives the particulars of the payments. But the depositions of the three parties to the suit on this subject are none of them as reliable and satisfactory as they might be. Some of the admitted facts and circumstances of the case tend strongly against the complainant. She said nothing of the alleged indebtedness when the conveyance to the

defendant was made. So far as appears, she never spoke of
it afterwards, either to the defendant Sarah or her father,
although she was well aware that they were paying off Cor-
nelius' debts. This silence on her part for seven years or
more before the judgment was confessed is a strong circum-
stance, in view of the peculiar condition of the family rela-
tions, to show that she did not consider the indebtedness as
existing.

The first release was for $4333.33, September 1st, 1858.
If this amount was unpaid on the 24th of March, 1859, it is
certainly a singular circumstance that the complainant on
that day borrowed, as it is proved and admitted she did,
$2000 of Cornelius, and secured it by a mortgage to him,
which she afterwards paid, saying nothing of any moneys he
owed. The explanation offered of this fact is not such as to
remove the doubts which the fact itself necessarily gives
rise to.

The second release was for $4666.66, April 30th, 1860. A
mortgage of the same date with the release was given by
Cornelius and wife to secure this amount. This mortgage
was produced on the 7th of July, 1860, to the clerk of the
county, receipted in full by complainant, and was canceled of
record. She denies that she was paid or that she received
anything for it.

On the previous day, July 6th, 1860, Cornelius and wife
conveyed to a Mr. Bramhall certain lands, for which com-
plainant gave the third release, for the consideration of $2000.
Sarah, the defendant, says that this $2000 was paid by a
mortgage for $4000, executed the same day by herself and
husband, including with the $2000 other indebtedness on the
previous mortgage, viz., that canceled on the following day.
The mortgage so canceled was produced to the clerk by
Bramhall, and the circumstances corroborate Sarah's account.

The $4000 mortgage was upon premises sold to one Har-
ney, who paid it off in November, 1864. On the 18th of
that month Harney made his check for $1075, payable to the
order of complainant, and duly paid by the bank. On the

next day the mortgage was produced to the county clerk, receipted in full by the complainant, and was canceled of record.

It is quite probable from the evidence that the business between Cornelius and his mother was done loosely, and that she acknowledged sometimes the receipt of moneys which she does not now remember to have received, and which perhaps she never did receive. But while I am indisposed to believe that she willfully mis-states, I cannot believe that during all these transactions wherein mortgages were given and discharged in connection with the very moneys now sought to be recovered, nothing in fact was ever realized by the complainant. It seems to be positively proved that she did receive the $1075 named in Harney's check. I cannot doubt that after Cornelius left his wife, in December, 1869, the complainant was persuaded to set up this claim, which she may have been induced to regard as legal and just, but which, under other circumstances, she would not have asserted.

But I do not think it necessary to say that the judgment was altogether without foundation, collusive and fraudulent. Admit that it was good. Will a court of equity, in view of the circumstances and facts of this case, lend its aid to enforce the judgment against the premises conveyed to the wife? I think not. The conveyance was made in pursuance of a family arrangement or settlement after consultation with complainant, with her approbation, and for reasons altogether commendable. The premises when conveyed were subject to encumbrances. Cornelius was largely in debt. He had been a burden and expense to the father-in-law Perry, and by his dissolute courses was fast bringing himself, his wife, and his child, to a state of destitution. After the conveyance was made, these encumbrances and debts were paid off by Perry and the wife. The whole course of their conduct and exertions was in undeniable ignorance of any claim on the part of the mother. It seems to me in the highest degree improbable that the mother herself at that time entertained

any thought that such a claim could ever be alleged.   If she then believed she had a good claim she should have spoken before the settlement was concluded and acted on.   Good faith so required; and having been silent when she ought to have spoken, equity will not permit her to speak now, to the prejudice of one misled by her silence.   In the light of this familiar and equitable doctrine, it seems to me clear that the complainant has no meritorious grounds upon which she can stand in this court, and that her bill should be dismissed, with costs.

I shall advise accordingly.