CAROLINE D. HAYES, administratrix, appellant,

*v.*

BENJAMIN F. PARKER, respondent.

1. An infant ward, falsely representing himself to be of age, made a settle-- ment with his guardian, taking for his share certain building lots at a valuation. He executed a discharge to his guardian.

2. No advantage was taken of the infant in such settlement, and by it the- guardian was induced to surrender a certain security he had taken for his own protection in managing the estate.—*Held*, that the ward cannot now disregard- in a court of equity, his discharge, and call upon the estate of the deceased. guardian to account.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Parker* v. *Hayes, 12 Stew.. Eq. 469.*

*Messrs. Cortlandt & R. Wayne Parker,* for the appellant.

*Mr. S. B. Ransom,* for the respondent.

The opinion of the court was delivered by

REED, J.

This case involves the liability of the estate of David A.. Hayes, who was the guardian of Benjamin F. Parker, to account to the ward for the assets which came to his hands as trustee. The assets were derived from the estate of Isaac S. Parker, the father of the ward. The former in his will bequeathed to Benjamin the sum of $7,400, invested in lands in the state of Illinois. The said sum was to be collected by the executors of the will, and by them paid over to Harriet Parker, an aunt of Benjamin, who was appointed guardian of Benjamin and trustee of this fund until Benjamin attained the age of twenty-one years. She was to invest it on bond and mortgage, and apply

the interest thereof to the maintenance and education of the ward. In March, 1862, Harriet Parker was removed and David A. Hayes was appointed in her stead.

The surviving executor under the will of Isaac S. Parker, about this time, filed a bill in the court of chancery for the settlement of the estate and for distribution of the assets, and, in pursuance of a decree made in that cause, the executor assigned to Hayes a promissory note of one Cory for $840, cash in the hands of one Jesse Blinn amounting to $423, the promissory note of Thomas McNeil for $2,200, and another note of said McNeil for $1,000. No account has ever been rendered, but a release was executed by the ward to the said Hayes. This release, which would otherwise be a complete bar to any claim against Hayes, is alleged by Parker to have been executed while he was still an infant. The vice-chancellor finds as a fact in the case that this allegation is true. Upon review, while the proof that the birth of Parker occurred in the spring of 1847 is not the most satisfactory, yet I think the finding below upon this point of the case cannot be said to have been erroneous. Accepting this as the date of his birth, he was still a minor at the time of the execution of the release in May, 1867. The question then arises whether Parker is in a position to invoke the aid of a court of equity to call the guardian or his representative to an account.

It is, of course, true that at law the execution of this paper by the minor is voidable. Nor would his assertion, made at the time of its execution, that he was of age, operate to change his position in a court of law. The fact that the infant had, by his false representations, led the other contracting party to negotiate and execute the contract, and injuriously change his position even, would, in an action by the adult to enforce it, be no answer to the plea of infancy.

At law it is conclusively presumed that a person within the age of twenty-one is unfitted for business, and that every contract into which he enters is to his disadvantage, and that he is incapable of fraudulent acts which will estop him from interposing the shield of infancy against its enforcement.

In equity, however, this rigid rule has its exceptions. Equity

will regard the circumstances surrounding the transaction—the appearance of the minor, his intelligence, the character of his representations, the advantage he has gained by the fraudulent representations, and the disadvantage to which the person deceived has been put by them, in determining whether he should be permitted to invoke successfully the plea of infancy. *Evroy* v. *Nicholas, 2 Eq. Cas. Abr. 488; Clarke* v. *Cobley, 2 Cox 173; Ex parte Unity Bank, 3 DeG. & J. 63 ; Cory* v. *Gertcken, 2 Madd. 362 ; Overton* v. *Banister, 3 Hare 503 ; Story's Eq. Jur. § 240; 1 Pomeroy's Eq. Jur. §§ 815, 945.*

This equitable rule was fully and correctly stated in the opinion of the learned vice-chancellor when the case was before the court of chancery. In the judgment of that officer, however, the facts did not permit him to treat this as a case in which the plea of infancy could be disregarded. The defendant's representative was ordered to account. I am compelled to differ from this conclusion. From the facts which I find proven, I regard the case as one in which the complainant is debarred from avoiding the release which he executed, and which, if accorded any significance, is a complete answer to his present demand.

The defendant Hayes was a practicing lawyer in the city of Newark. One Silas G. Randall, of Rockford, Illinois, with Hannah C. Parker, the mother of complainant, came to him, and employed him professionally to take charge of these matters of Benjamin C. Parker, the complainant. They represented that Harriet Parker, the aunt, who was then guardian, was wasting the estate, and that she was irresponsible. Steps were taken to compel her to give security, or, in default of security, to have her removed, and also to prevent her from receiving any more of the assets from the executors of the will of Isaac S. Parker.

She was unable to furnish security, and she was removed from her position as guardian. Both Randall and the mother of the complainant urged Mr. Hayes to accept the place of guardian. He refused to do so, and only after repeated solicitation, and after the mother had tried and failed to get sureties for herself, and upon Randall promising to manage the business in Illinois and secure Hayes against liability, he finally consented to

accept the trust. In pursuance of this arrangement, Randall executed to Hayes his bond, with one Jesse Blinn as surety, conditioned that he, Randall, should perform the duties, as agent of Hayes, in respect to the above-mentioned matters, and pay over and account for all money that came to his hands.

Randall was partner in business with Blinn, the surety, and they handled the Illinois assets.

In 1865 Hayes went to Illinois, and met the complainant and his mother and Blinn. Blinn acknowledged an indebtedness to Hayes, and asserted his inability to pay, but offered to convey lands in lieu thereof, which was refused, and Hayes placed the matter in the hands of Brown & Taylor, a firm of lawyers in Rockport, for the purpose of collecting the amount owing by Blinn.

In the month of February, 1867, the complainant, with his mother, came to Newark, and represented that the complainant was twenty-one years old, and requested a settlement of Hayes's account as guardian. Hayes insisted that on account of the circumstances which induced him to accept the trust, the complainant should wait until the action against Blinn was terminated, or else the complainant should take an assignment of Hayes's. claim against Blinn.

To the latter proposition complainant assented, upon the condition that Hayes should loan him $500 to start in business, and that Hayes should make no charge for services or commissions. An assignment of said claim was drawn, as also a release and discharge from Parker to Hayes, but Parker did not appear on the day fixed for their execution, and when Hayes sought an interview Parker told him that he would not attain his majority until the following April, 1867 ; that his mother had been mistaken in regard to his age. It was then arranged that Parker should return to Illinois, and await the arrival of his twenty-first birthday, when the $500 should be forwarded, and the settlement already agreed upon should be consummated.

The check was sent by Hayes to Brown, the lawyer in Rockport, and about May 25th, 1867, Parker called at the office of Brown, who told him that he had the check, which he would de-

liver upon the execution of a note for the amount due from him to Hayes. Parker told him that Hayes had written to him that Blinn had a proposition for a settlement, and stated that he would like to see Blinn and talk the matter over with him. Upon Brown's inquiry, Parker said that he was of age the preceding April. Brown took him, with McMullen, the father-in-law of Parker, and introduced them to Hosmer P. Holland, a son-in-law of Blinn, who was empowered by Blinn to make a settlement. Holland told them that if he (Parker) was willing to take in settlement certain lots of land at a fair valuation, he (Holland) was willing to aid Blinn, who was in embarrassed circumstances, to make a settlement. To this Parker demurred, because no cash was to be paid, when Holland offered to pay him $500 in cash, and give him lots, to be selected by Parker, to the value of $3,620. Parker and McMullen were shown lists of lots, and after they had been advised by Brown to examine the lots, and full information had been given and sources of information as to their value had been afforded them, they made their selection. The lots were conveyed and a release was executed by Parker to Hayes, and by Hayes to Blinn, as one of the conditions of the settlement. Parker, while still a minor, conveyed one tract to a person not named, and the residue to his mother, and she has conveyed one tract to a third person.

From the above recital of the facts as I find them, this case does not present an instance where a guardian has settled with his infant ward without giving him the full amount of what is due to him. In such case, the guardian would be equitably called upon to account for the balance, unless some exceptionable feature marked the transaction. But here the result of the settlement was to discharge Blinn from all liability to Hayes as surety for Randall's conduct. It stripped Hayes of all right to proceed against Blinn subsequently.

There is nothing to show that Hayes could not have made in money the amount due from Blinn to him. But Parker was in haste; he wished to possess his property. Had he waited till he was of age, the suit against Blinn might have been determined. But by the untrue assertion of his age he drove Hayes to prema-

ture action, and the result was that Parker chose to accept the benefit of Blinn's contract with Hayes in the shape of the settlement already mentioned. So far as regards the settlement itself, there is no evidence of any unfairness on the part of any one. The real property seems to have been fairly valued. There was no concealment of the condition of the assets of the estate, and although no itemized account had been rendered from Hayes to Parker, yet they all acted as if they knew the condition of affairs, and I have no doubt they all substantially did know it.

In view of the manner in which Hayes assumed this trust, of the manner in which he was compelled, in a degree, to depend upon others in the management of the assets, and regarding the age and appearance of his ward, and the undiscoverable deception practiced by him upon Hayes, and the fact that the settlement was fairly made, and that by its operation Hayes is deprived of all remedy over against his surety, I think it would be inequitable to permit Parker to disregard his executed discharge of Hayes, and now call upon his estate to account.

The decree should be reversed.

For affirmance—DIXON, WHITAKER—2.

For reversal—THE CHIEF-JUSTICE, DEPUE, KNAPP, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, COLE, MC-GREGOR, PATERSON—12.