This is a bill for specific performance of an agreement for the sale of land. The complainant is the vendee and the defendant the vendor. The sole defense to the bill is that the defendant, at the date of the contract, was a married woman, and that the contract was executed and acknowledged by her alone, without the joinder of her husband. *Page 255 
The matter comes before me on motion to strike out the answer and enter decree. While the answer admits most of the facts set out in the bill of complaint, the solicitors of the respective parties have filed a stipulation containing an agreed state of facts for the purposes of this motion. From this stipulation it appears that on May 22d 1925, the defendant, under the name of Anna Ruskin, executed and acknowledged the written agreement which is the subject of this suit, and that at that time she represented herself to be a widow, and was so described in the agreement of sale. The contract was duly executed by the complainant, and he thereupon paid the sum of $500 on account of the purchase price and in accordance with the terms of the agreement. The time fixed for closing was July 1st, 1925, but owing to the absence of the defendant at that time settlement was postponed, by mutual agreement, until August 5th, 1925. On August 4th, 1925, there was submitted to the attorney of the complainant, for his approval, a deed for the property, the subject of the sale, which deed was executed and acknowledged by the defendant under the name of Anna Ruskin Abrams, and also by one Abraham Abrams, who was described in the deed as the husband of the defendant. This deed was approved by the complainant's attorney and returned to the attorney of the defendant. On the following morning the parties, with their attorneys, met for the purpose of settlement. The complainant tendered the balance of the purchase price, but the defendant declined to receive it, and instructed her attorney not to deliver the deed and refused to perform the agreement, claiming that she was not obliged to do so, because at the time of making the contract she was a married woman, and the contract was not joined in by her husband. Neither the complainant nor his attorney knew the defendant had a living husband until the submission of the deed for approval as above mentioned, the complainant relying on the defendant's representation that she was a widow. The property which is the subject of the agreement was acquired by the defendant by deed prior to her marriage to Abraham Abrams. At the time of the execution *Page 256 
of the agreement she was living in a state of separation from her husband, and divorce proceedings were then pending between them and a final decree, dissolving the bonds of matrimony, was entered in that suit on July 7th, 1925. No issue was ever born of the marriage.
This motion is based upon the following grounds as stated by the solicitor of complainant:
1. The defendant is estopped in equity because of her fraud from setting up the defense of coverture.
2. The disability of coverture having been removed before the time fixed for performance, the contract is enforceable against the defendant as a feme sole.
3. That a sufficient concurrence by the defendant's husband in her said agreement is evidenced and manifested by the deed of conveyance executed by him, together with the defendant, which deed af conveyance the defendant, after its due execution, refused to deliver to complainant.
4. There was no necessity for the husband's concurrence in the agreement in question, because section 8-p of the Married Women's act qualifies and enables a married woman, circumstanced as was the defendant at the time of the making of the contract, to convey without the concurrence of her husband.
The defendant counters with the following propositions:
1. The doctrine of estoppel is inapplicable and cannot be invoked in this case.
2. Although the divorce from her husband may have operated to make the defendant a feme sole as to contracts made subsequent to the divorce decree, nevertheless, contracts made prior to the dissolution of the marriage ties, being invalid and unenforceable at that time, carry that "taint" with them thereafter, and, consequently, are unenforceable.
3. It is elementary that a deed, even though duly executed with all due form and solemnity, is a nonentity unless its execution is attended by delivery.
4. In view of the foregoing, section 8-p of the Married Women's act has no application.
I will consider these opposing propositions in their order — *Page 257 
 1.
The first question which arises is as to the application of the doctrine of equitable estoppel under the circumstances of this case. The general rule of equitable estoppel as applied to married women is stated by Professor Pomeroy in his work on 2Pom. Eq. Jur. (4th ed.) 814, thus:
"Upon the question how far the doctrine of equitable estoppel by conduct applies to married women, there is some conflict among the decisions. The tendency of modern authority, however, is strongly towards the enforcement of the estoppel against married women as against persons sui juris, with little or no limitation on account of their disability. This is plainly so in states where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right or to maintain a defense."
That the doctrine of estoppel is applicable to married women in New Jersey, both at law and in equity, is shown by the following cases: Brinkerhoff v. Brinkerhoff, 23 N.J. Eq. 477; Besson v.Eveland, 26 N.J. Eq. 468; National Bank v. Hamilton, 34 N.J. Eq. 158; Francis v. Lawrence, 48 N.J. Eq. 508; Ruckelschaus v.Oehme, 48 N.J. Eq. 436; Hamlen's Administrator v. Bennett,52 N.J. Eq. 70; Ruckelschaus v. Borcherling, 54 N.J. Eq. 344;affirmed, 55 N.J. Eq. 589; Wheeler Wilson Manufacturing Co. v.Litwin, 57 N.J. Eq. 660; Mertens v. Schlemme, 68 N.J. Eq. 544;Mayer v. Kane, 69 N.J. Eq. 733; Neslor v. Grove, 90 N.J. Eq. 554; National Bank v. Rutter, 91 N.J. Law 424; affirmed,92 N.J. Law 621.
It is contended by the defendant, however, that the doctrine of estoppel is not here applicable, and he cites as authority for this contention the case of Belmar Bank v. Shumard,91 N.J. Law 379; but that case, whatever may be its authority at law, is not, in my judgment, authority for the proposition that a married woman may not be estopped *Page 258 
in equity. In that case, which was a suit at law on a promissory note, it was held that a married woman was not liable as an accommodation endorser, and that she was not estopped from setting up coverture as a defense by her representation made at the time of the endorsement that she was then a widow; but that was an action at law, and the weight of this decision is now questioned by counsel for complainant in view of the later case of La Rosa v. Nichols, 92 N.J. Law 375.
In the Shumard Case Mr. Justice Swayze said: "The case of a married woman is like the case of an infant, except in so far as her incapacity has been removed," and then refers to the case ofParker v. Hayes, 39 N.J. Eq. 469; 41 N.J. Eq. 630, for a statement of the rule of application of the doctrine of estoppel to infants. In this latter case Vice-Chancellor Van Fleet said (at p. 478):
"It is no answer at law to the fact of infancy that the person dealing with the infant was induced to do so by the infant's fraudulent representation that he was of full age. * * * The rule in equity, however, is different. In equity, in the language of Lord King, infants have no privilege to cheat men. If an infant obtains property by fraudulently representing himself to be of full age, equity will compel him either to pay for the property or to surrender it.
"The justice of this rule is manifest. At law an infant is incompetent to make a valid contract except in certain exceptional instances. He may be old enough, and cunning enough, to contrive and carry out a fraud, yet, if he does, the law is powerless to give redress. The law cannot prevent him from using the shield which was intended simply as a protection, as a cover for his own cheating. Equity, to correct this wrong, steps in and declares that when an infant induces another to deal with him by fraudulently representing himself to be of full age, that, to the extent that the contract is just and fair to him, and also to the extent to which it is necessary to hold him to it to prevent him from reaping the fruits of his fraud; he shall be compelled to abide by it." *Page 259 
On appeal, the court of errors and appeals approved this statement of the equitable rule of estoppel.
In La Rosa v. Nichols, 92 N.J. Law 375, the court of errors and appeals held, however, that the doctrine of estoppel was applicable at law to an infant who had represented himself to be of full age and had thereby obtained credit. Chancellor Walker, who wrote the opinion, said: "If this suit were in the court of chancery a plea of infancy in the circumstances of this case would not be tolerated."
If the common law disability of a married woman is like the common law disability of an infant, as was said in the ShumardCase, and as was said also in the later case of Bank v.Rulter, 92 N.J. Law 621, and if the defense of infancy would not have been tolerated in equity in the La Rosa Case, then the defense of coverture ought not to be tolerated here. The case ofBank v. Rutter, 91 N.J. Law 424, and on appeal affirmed in92 N.J. Law 621, is not opposed to complainant's contention here. The Rutter Case was a suit against a married woman who was an accommodation maker of a note to the order of her brother. After the words "value received," on the note, the words "for my own use and benefit" were written. As a matter of fact, the married woman obtained no benefit whatever from this note, and the jury found as a fact that the statement that the note was for her own use and benefit was known by the bank officials to be untrue. This representation, therefore, did not deceive the bank, and, of course, under those circumstances, there could be no estoppel.
The case of Corby v. Drew, 55 N.J. Eq. 387, is mainly relied upon by counsel for the defendant in support of his contention that this contract is unenforceable. Numerous other cases are cited by counsel for defendant to show that the rule ofCorby v. Drew is still the law, and among them the following:Goldstein v. Curtis, 63 N.J. Eq. 454, Schwarz v. Regan,64 N.J. Eq. 139; Ten Eyck v. Saville, 64 N.J. Eq. 611; Moore v.Baker, 65 N.J. Eq. 104; Wolff v. Meyer, 75 N.J. Law 181;Schickhaus v. Sanford, 83 N.J. Eq. 454; Chassman v. Wiese,90 N.J. Eq. 108; Patterson *Page 260 
v. Loiseaux Lumber Co., 92 N.J. Eq. 569; Kotok v. Rossi,94 N.J. Eq. 327; Kolinsky v. Pilz, 94 N.J. Eq. 796; Chianese v.Cachia, 3 N.J. Mis. R. 1229.
 Corby v. Drew held that equity would not specifically enforce a married woman's contract to convey her lands without reference to whether or not her husband joined therein. In that case Vice-Chancellor Stevens said: "But if she cannot convey without the concurrence of her husband, it would seem to follow that she cannot agree to convey without that concurrence."
This language is seized upon by counsel for the defendant in support of his contention that the defendant's contract is unenforceable. In the previous case of Union Brick and Tile Co.
v. Lorillard, 45 N.J. Eq. 289, the question of the capacity of a married woman to contract without the joinder of her husband was also left undecided. Both of these cases, however, were decided prior to the revision of the Conveyancing act of 1898. Also the case of Moore v. Baker, although decided after the revision, had under consideration a contract made prior to that revision. None of these cases are wholly applicable to the case at bar.
The first case involving a contract of a married woman to convey lands after the revision was Goldstein v. Curtis,supra. In that case Vice-Chancellor Pitney held that a married woman's contract for the sale of land which was duly acknowledged and joined in by her husband was enforceable in equity. That case is not opposed to complainant's contention in the case at bar.
Wolff v. Mayer was a suit against a married woman for damages for breach of her contract to convey land. Her husband did not join in the contract nor was it acknowledged by her. Mr. Justice Swayze, speaking for the supreme court, said: "It was suggested, but not decided, in Corby v. Drew, that if a married woman could not convey without the concurrence of her husband, she could not agree to convey without that concurrence. The impossibility of performance of a contract to convey made by a married woman alone is, however, not, strictly speaking, an impossibility in law such as *Page 261 
would make the contract void. It is an impossibility which may or may not arise, and is dependent on the will of her husband. One authorized to contract may make a valid contract although the possibility of performing depends upon the will of another."
The defendant was held liable in damages. Goldstein v.Curtis and Wolff v. Mayer show that the authority ofCorby v. Drew is somewhat modified.
But the possibility of performance of the contract here does not depend upon the will of another. It is dependent upon the defendant alone. If a married woman's unacknowledged contract is valid at law, as was held in Wolff v. Mayer, a fortiori is her acknowledged contract good in equity?
The cases of Schwartz v. Regan and Chianese v. Wiese
have no application here, as the only point involved in those cases was the lack of an acknowledgment to the contract of sale.Schickhaus v. Sanford is not applicable because there the question was as to the validity of certain building restrictions. Whatever was said by Vice-Chancellor Emery in that case in reference to specific performance of married women's contracts requiring conveyances of lands in consummation thereof, wasdictum. In Kotok v. Rossi the question there before the court was as to the effect of a married woman's unacknowledged power of attorney as a conveyance. It was very properly held that, the power of attorney being unacknowledged, the contract signed and acknowledged by the agent, pursuant to that power, was unenforceable. The "river could rise no higher than its source." In Kolinsky v. Pilz the lease which was construed to be a contract of sale was not acknowledged by the defendant married woman separate and apart from her husband, as required by law at its date, and this was held to preclude specific performance. InTen Eyck v. Saville, as in Schwarz v. Regan andChassman v. Wiese, one of the points involved was that the contract was not acknowledged by the married woman, and it was on that account held unenforceable. In Chianese v. Cachia, 3 N.J.Mis. R. 1229, cited by counsel for defendant to show thatCorby v. Drew is still the law, the court found as a fact that *Page 262 
the husband was dead when the contract was executed by the defendant who set up coverture as a defense. In none of these cases did the question of estoppel arise. In Patterson v.Loiseaux Lumber Company the estoppel claimed was based upon complainant's letter, but the letter itself was induced by a misrepresentation of the defendant, and the court held that the complainant, a married woman, was not estopped by her letter because of that misrepresentation. But there was no suggestion in that case that the doctrine of estoppel was not applicable to a married woman in a proper case.
There is ample authority in other jurisdictions supporting the application of the doctrine of estoppel to a married woman in cases similar to this case, and supporting the text from Pomeroy, above quoted. See Roberson v. Goldsmith, 57 So. Rep. 908;Keller v. Lindow, 133 S.W. Rep. 304; Townsend v. Woodworth,169 N.W. Rep. 752; Overcast v. Lawrence (Ky.),131 S.W. Rep. 1029; Bigelow v. Foss, 59 Me. 162; Engholm v. Ekrem
(N.D.), 119 N.W. Rep. 35; Galbraith v. Lunsford (Tenn.),1 L.R.A. 522; Stafford v. Stafford, 58 Eng. Ch. 150 (44Reprint 697); Mathews v. Murchison, 17 Fed. Rep. 760; Graham
v. Meneilly, 16 Grant U.C. Ch. 661.
In McCoy v. Niblick (Pa.), 77 Atl. Rep. 551; 30 L.R.A.
(N.S.) 353, it was held that a married woman whose husband does not refuse to join in a deed of her real estate cannot avoid her contract to make the sale on the theory that he has not joined, where the statute gives her the same right to sell her real estate as though she were sole, except that her husband must join in the deed. That was a suit in ejectment. It appeared that the husband had not joined in the contract of sale. The married woman vendor refused to perform, alleging coverture and non-joinder of the husband as an excuse. It appeared that the husband had not refused to join in the conveyance and had not even been asked to join. The court held that the wife was bound to affirmatively show a refusal by her husband to join in the conveyance. This she was unable to do, but on the contrary the husband testified that he was willing to join in the conveyance. The court *Page 263 
held that it was no more her privilege to refuse to perform than if she had been a single woman. The court said:
"When a married woman cannot perform her contract for the sale of her real estate the law will not make her, but when she simply will not, it will not help her to escape her covenant. When she cannot carry out an honest contract to sell she is not morally blamable, and the law will exact nothing more from her than compensation to her vendee for any loss he may have sustained in reliance upon the contract; but when she capriciously will not perform, she becomes not only persona non grata in foroconscientiae, but a plaintiff without cause of action in a suit at law in repudiation of her contract."
The restriction on conveyances by married women is much the same under the Pennsylvania and New Jersey statutes, so that the language of the court in the case last cited is quite applicable here. A married woman's contract being enforceable only at the will of the husband, as was said in Wolff v. Mayer, supra, she cannot substitute her will for his. While the husband may refuse to join in the deed for any reason or no reason at all, she has no right to refuse because of mere whim or caprice. The law excuses her if she cannot perform because of her husband's refusal, but it does not excuse her merely because she will not
perform. One who can but will not ought to be made to perform. That is the situation here.
In order to determine just what are the rights of a married woman with respect to contracts and conveyances affecting her separate estate, as applied to the instant case, it is necessary to consider sections 5 and 14 of the Married Women's act (3Comp. Stat. pp. 3226, 3237), together with sections 21 and 39 of the act respecting conveyances. 1 Cum. Supp. Comp. Stat. pp.627, 632. Section 5 of the Married Women's act fully and completely empowers a married woman to bind herself by contract to the same extent as though she were unmarried, with certain specified exceptions, and such contracts are made enforceable both at law and in equity. The only restriction on this power with which we are here *Page 264 
concerned is that contained in section 14 of the Married Women's act, which prevents an actual conveyance of her land without the joinder of her husband, except in certain specified instances. Section 39 of the act respecting conveyances provides that "every deed or instrument of the nature or description set forth in the twenty-first section of this act," executed and acknowledged by a married woman, "shall be good and effectual to convey or affect" her lands. Agreements of sale are specifically included in the list of instruments mentioned in section 21 of that act. In Goldstein v. Curtis, supra, Vice-Chancellor Pitney (at p. 461), said:
"A familiar way to `affect' the interest of a person in land is to contract to convey it; and the only mode in which such a contract can be made `good and effectual' is to compel its specific performance by a decree of this court."
It appears, therefore, that a married woman is as free to contract with respect to lands of her separate estate as a femesole, except for the restriction that she cannot convey orencumber her lands without the joinder of her husband. The purpose of this restriction, as contained in section 14 of the Married Women's act, was to protect her husband in his rights in his wife's property; to prevent her from conveying or encumbering his rights as a tenant by the courtesy without his consent. Lorillard v. Union Brick and Tile Manufacturing Co.,44 N.J. Eq. 5.
In Wolff v. Meyer, 75 N.J. Law 181, Mr. Justice Swayze said: "An agreement to convey is obviously not a conveyance," and in Sullivan v. Barry, 46 N.J. Law 1, Chief-Justice Beasley held that the word "encumber," as used in section 14 of the Married Women's act, was used in its ordinary and not its technical sense, and that agreements to convey were not encumbrances within the meaning of the word. In Kotok v.Rossi, 94 N.J. Eq. 327, Vice-Chancellor Buchanan said that a contract for the sale of lands is an equitable conveyance, and if invalid as a conveyance is unenforceable as a contract; but that language was intended to apply only to the state of facts which was then before the court, and so far as it is applied to any other state of facts it is dictum. *Page 265 
But it is insisted by counsel for defendant that a married woman occupies a status sui generis, and that the law throws around her a "cloak of protection" which protects her from the "outside world" and prevents her from making a contract or conveyance affecting her lands without the joinder of her husband. In so far as this contention assumes that the common law disabilities of the married woman were designed for her protection I am unable to subscribe to it. My notion of the reason for the common law disabilities of the married woman is not that she required greater protection of the law than a femesole. These disabilities were not a "cloak of protection from the outside world." The disability provisions of the common law had two objects — first, to protect the husband in his rights acquired by the marriage, and second, to protect the wife from undue influence of her husband. 1 Bl. (Lewis' ed.) 442 note75. At common law the effect of marriage was to merge the existence of the wife into the legal life of the husband, so that with respect to property and civil rights, she, as a separate person, had no recognition. Perkins v. Elliott, 23 N.J. Eq. 526.
Upon marriage the husband became vested with such an interest in his wife's property, real and personal, that it was subject to his debts, and he had the power of disposal. Bristol v.Skerry, 64 N.J. Eq. 624. As a result of this rigorous rule there was built up the equitable doctrine of the wife's "separate estate" for her protection. It had its beginning as early as the seventeenth century, but as late as 1722 some of the English judges denied the right of a married woman to have a separate estate. Powell v. Hankey, 2 P.W. 82 (Old English). All the modern enabling acts enlarging the rights and powers of married women are the outgrowth of this equitable doctrine. The "cloak" which the law has thrown around the married woman was, therefore, never for her protection from the "outside world." Its paramount purpose was the protection of the husband. The "cloak" of present-day law is enabling, not restrictive. The requirement of joinder of the husband in the wife's conveyance is but a survival of that ancient common law which *Page 266 
vested in him all his wife's property and subjected it to the payment of his debts. Her right now to contract with respect to her separate estate and her right to convey are merely extensions of the equitable doctrine of the wife's separate estate, which was originally built up for her benefit. This equitable doctrine has been enlarged and extended by both courts and legislative bodies to the point where, since the adoption of the nineteenth amendment to the federal constitution, practically all of the disabilities of women, both married and single, have been removed, so that to-day she has practically all the rights and privileges of the male citizen. There is now, therefore, no real reason for any different application of the rule of estoppel to a married woman than to a feme sole, or to the male citizen. It is neither right nor just that, having come into the possession of all these rights and privileges, she should cling to them with one hand while retaining with the other some part of those ancient common law disabilities as a cloak for her fraud. Modern woman, generally speaking, needs no protection at law which is not afforded to man. The idea that woman is man's inferior in business, professional or political life, has long since been thrown into the discard. She has been placed on a plane of practical equality with man, and in most, if not all, fields of endeavor to which she has applied herself, has proven herself man's equal. Why then should she need a "cloak of protection?" She has, of course, retained her individuality in her intrinsic womanhood, and in this respect does now, and always will, occupy a loftier plane than mere man, and laws designed to protect her in this respect are, of course, an exception to this rule of necessity. But while the law protects her, it gives her no license to commit fraud. If, therefore, she has equal rights with man, she should assume equal responsibilities. Why should not the wife's contract, not joined in by the husband, stand in the same position as the husband's contract not joined in by the wife? There is, in principle, no reason. The requirement of joinder in both cases is a survival of an archaic law. In a proper case the husband's contract *Page 267 
will be enforced with an abatement on account of the wife's dower, as where he procured her dissent by fraud. South JerseyFurniture Co. v. Dorsey, 95 N.J. Eq. 530; Luczak v. Mariove,92 N.J. Eq. 377. In my judgment, the modern Married Women's law, as reflected in our statutes governing married women's contracts, does not have the effect claimed for it by counsel for the defendant. I see no reason why the rule of estoppel should not be applied to the defendant under the circumstances of this case. If it be said that this decision marks a departure from established rules and precedents, that this is, in effect, an enlargement of the rights and powers of a feme covert over her separate estate, my answer is that, while not admitting such departure or enlargement, changing conditions in the world of business from time to time, require modifications in the rules of law and equity previously promulgated to meet different circumstances, and for this proposition I have no less authority than Chief-Justice Beasley, speaking for the court of errors and appeals in Perkins v. Elliott, supra, where he said:
"My examination has satisfied me that this entire subject, with respect to the power of the feme covert over her separate estate, has been the creation of the court of equity, and that the system has been from time to time circumscribed or extended, not under the coercion of any inflexible rules or established principles, but in accordance with judicial opinion founded on very general considerations as to the propriety or policy of the particular circumscription or expansion."
With the enlargement and extension of the rights and privileges of both married and single women, so should their liabilities and responsibilities correspondingly enlarge and extend.
Counsel for the defendant says that, as "equity follows the law," the legal rule of estoppel should be applied here. It is true that "equity follows the law" in the sense of obeying the law. An example of this is in the application of the statute of limitations in equity. But this maxim "operates within very narrow limits. Throughout the great mass of *Page 268 
its jurisprudence, equity, instead of following the law, either ignores or openly disregards and opposes the law. The maxim is very partial and limited in its application." 1 Pom. Eq. Jur.
(4th ed.) § 427.
As a matter of fact, the whole equitable doctrine of a married woman's separate estate has been built up in equity in direct violation of legal rules.
In my judgment, the first point on which the complainant bases his motion is well taken.
 2.
Having come to the conclusion that the defense of coverture is not now available to the defendant because of the application of the doctrine of estoppel, this pronouncement might very well stop here; but because I feel that the other objections raised by the complainant to the interposition of the defense of coverture here are sufficient to warrant the decree which I have determined to advise, I will also consider the other points advanced.
The next question, therefore, is as to what effect should be given to the entry of the decree of divorce between the defendant and her former husband before the time fixed for the performance of her contract. It appearing, as hereinbefore pointed out, that the restriction on married women for the sale of lands was imposed for the protection of the husband, it would seem that, when the reason for this restriction ceases to exist, the restriction itself should be removed. In Union Brick and TileCo. v. Lorrillard, 44 N.J. Eq. 5, the court said:
"At the death of the husband the limitation upon the execution of the contract by conveyance, and, with it, the objection to the specific performance of the contract, is removed. I conceive that the only purpose of the limitation is to enable the husband to preserve from alienation a property in which he may acquire an estate. The possibility of such acquisition is extinguished at his death." *Page 269 
The possibility of the husband's acquiring any interest in his wife's property is as effectually extinguished by divorce as by death. Supreme Council Americal Legion of Honor v. Smith,45 N.J. Eq. 466; Bucci v. Popovich, 93 N.J. Eq. 121.
Counsel for defendant insists, however, that a contract which was invalid and unenforceable during coverture cannot be made valid and enforceable thereafter. The difficulty with that proposition is that it is based on a wrong premise. A married woman's contract for the sale of land is not invalid. In fact, it is made both valid and enforceable by the statute. MarriedWomen's act, § 5; 3 Comp. Stat. p. 3226. It is only unenforceable at the will of the husband. The law gives him the right to protect his interest in his wife's lands by giving him the privilege of refusing to join in a conveyance, and has thus rendered the contract enforceable only at his will; but when this right to exercise that will ceases to exist, performance is no longer subject to his will. In my judgment, the removal of the disability of coverture before the time fixed for performance renders the contract enforceable, irrespective of the fact that the former husband has already executed the deed in pursuance of that contract.
 3.
The defendant contends that the deed which has been executed by the defendant and her former husband, until delivered, is ineffective as a conveyance. This undoubtedly is the law. TenEyck v. Saville, supra. Nor is the deed an acknowledged agreement within the meaning of the Conveyancing act; but if this contract is enforceable for other reasons, this court may direct the delivery of the deed already executed, if necessary. It is sufficient evidence of the husband's willingness to convey if any such evidence were necessary. Hulmes v. Thorpe, 5 N.J. Eq. 415
(at p. 423); Krah v. Wassmer, 75 N.J. Eq. 109; SouthJersey Furniture Co. v. Dorsey, 95 N.J. Eq. 530; Luczak v.Mariove, 92 N.J. Eq. 377. *Page 270 
 4.
Complainant's contention that there was originally no necessity for the concurrence of the husband in the agreement in question because of the provisions of section 8-p of the Married Women's act is not entirely correct. The case of Wolfe v. Clohessy, 40N.J.L.J. 299, is cited in support of this proposition. That was a case in the supreme court, tried before Judge Spear at the Hudson circuit, and it was there held that a deed of a married woman coming within the provisions of this act conveyed an estate in fee simple, and that her heirs were estopped from questioning its validity; but it has uniformly been held in this court that the acts authorizing conveyances by married women who are living in a state of separation from their husbands authorize a conveyance only of the interest of the wife, subject to whatever interest the husband may have. The latest case on this subject is that of Mullen v. Mullen, 98 N.J. Eq. 90, 727, 728.
In the case sub judice, the stipulation of facts brings the defendant clearly within the provisions of this act. She could, by virtue of this statute, contract and convey all of herinterest in her lands, subject to whatever rights her husband had. She could not convey clear of those rights, but as divorce has put an end to whatever rights her former husband had, a discussion of the effect of her conveyance on his interest is purely academic. The complainant being now willing to accept a conveyance of such interest as the defendant has, and the defendant being within the provisions of this statute, the contract is enforceable.
Under all the circumstances I feel that the complainant's motion should prevail. I can imagine no more glaring lack of respect for the obligation of a contract than that here displayed. A mere recital of the facts is sufficient to shock the conscience of the court. The first thought which comes to mind upon hearing this recital of facts is that the defendant ought to be made to perform. In equity, wherever there is *Page 271 
an "ought," there is a remedy. To refuse to enforce this contract would, in my mind, be to set the stamp of this court's approval on dishonest business transactions. The world's business to-day is grounded on faith and reliance upon the obligation of contract. This is known as credit. Women as well as men should be taught to respect their obligations if this business credit is to be maintained.
The complainant's motion is granted and I will advise a decree in accordance with these conclusions.