## JOHN RUCKELSHAUS

### v.

## CHARLES BORCHERLING.

A tenant by the curtesy, having let to a tenant a store which his deceased wife had owned, died during the term. At his death there was found a recorded deed of said store, purporting to have been made to him by the heiress-at-law of his wife, of which deed the lessee of the store was informed, and thereupon paid his rent to the agent of the heirs of the lessor, who distributed it to the numerous heirs, who were living in different parts of the United States. After the death of the lessor, the heiress-at-law was apprised of the existence of the deed purporting to have been made by her, but failed to inform the lessee that she repudiated the deed and claimed to be the owner of the store. Sixteen months after the lessor's death she began an action of ejectment against the lessee, claiming that the said deed was a nullity, and she recovered judgment.—*Held*, that the heiress will be restrained from compelling a repayment of the rent due from the time of the lessor's death to the time of beginning the action for ejectment, on the ground that she had estopped herself by her silence, when she should, under the circumstances, have warned the tenant of the invalidity of the deed.

---

On bill, answer and proofs.

*Mr. Joseph Coult*, for the complainant.

*Mr. Chauncey G. Parker* and *Mr. Cortlandt Parker*, for the defendant.

REED, V. C.

The facts set up in the bill will be found stated in detail in the opinions delivered in this court and in the court of errors

and appeals when this cause was before those courts on demurrer to the bill. *3 Dick. Ch. Rep. 436; 4 Dick. Ch. Rep. 340.*

The following statement is deemed sufficient for the present purposes.

Ruckelshaus, the complainant, was a tenant of Hugh H. McCulloch under a five-years' lease, which would expire on April 1st, 1885. McCulloch died on May 3d, 1883. The rented premises had been the property of McCulloch's deceased wife. McCulloch's estate at the time of the renting was that of tenant by the curtesy. At his death the heir-at-law of his deceased wife was her sister, Mrs. Mary J. Oehme. There was, in fact, upon record at the time of McCulloch's decease, a deed purporting to be made by Mrs. Oehme, conveying the rented property to McCulloch in his lifetime.

Upon McCulloch's death, Ruckelshaus was concerned to know to whom he should thereafter pay his rent. In the absence of any conveyance by the heiress, Mrs. Oehme, to McCulloch, the rent would be naturally paid to the former. Ruckelshaus, upon inquiry, however, was informed of the fact that Mrs. Oehme had, during McCulloch's life, made the deed mentioned. Ruckelshaus thereafter, for about sixteen months, paid the rent to the agent of the heirs of McCulloch, who distributed it to numerous heirs living in different parts of the United States.

On July 20th, 1884, Mrs. Oehme, claiming that the deed which purported to have been made by her, conveying the property to McCulloch, was obtained by fraud, and that Ruckelshaus' term had expired with the death of McCulloch, began an action of ejectment against Ruckelshaus. In this action she succeeded. Following the judgment in that case, she brought an action for *mesne* profits and recovered the value of the premises from the period of McCulloch's death down to October 1st, 1885, when Ruckelshaus began the payment of the rent to her.

This bill is filed to restrain the collection of a part of the judgment recovered for *mesne* profits. It is that portion of the judgment which includes the value of the premises from the death of McCulloch to the time of bringing the action of ejectment. The ground upon which the court is asked to restrain

the collection of this portion of the judgment is that Ruckelshaus was led to believe, either by the words of Mrs. Oehme communicated to him, or by her silence, when it was her duty to enlighten him, that the deed purporting to have been made by her to McCulloch was *bona fide,* and so he was led to pay his rent to the heirs of McCulloch.

The estoppel thus raised against the representation of Mrs. Oehme is rested upon two grounds. The first is that Mrs. Oehme admitted that she made the deed purporting to be executed by her to McCulloch; that she knew at the time of these admissions that her words would be communicated to Ruckelshaus, and that he would be likely to shape his conduct by their import.

The second ground is that, when she should have known that Ruckelshaus was likely to pay his rent to the agent of the heirs of McCulloch, in the belief that McCulloch died seized in fee of this property, she did not apprise him that she claimed to be still the owner of the property.

The facts upon which the first insistence is rested are these: It appears that when McCulloch died, one William McCulloch, a nephew of his, was at his uncle's house. After his uncle's death, William assisted in looking after his affairs. Among the papers of McCulloch, he found two deeds, one purporting to convey some harbor lots to McCulloch, and another purporting to convey to McCulloch the rented premises in question. These deeds purported to be executed by Mary J. Oehme.

William McCulloch seems to have asked a Mr. John H. Kase to administer upon the estate of McCulloch, deceased. Mr. Kase excused himself from undertaking the office, on the plea of the pressure of his own business. Upon his declination, Charles M. Kase, the son of John H. Kase, was selected, the father having promised that he would render him what assistance he could in the practical administration of the estate. Charles M. Kase having qualified as administrator, McCulloch delivered to him the two deeds mentioned. Kase was not only the administrator of McCulloch, but he was appointed the agent of the heirs of McCulloch.

Mr. Kase says that he had an interview with Mrs. Oehme upon an occasion when he was examining the papers of the deceased. In that interview, he says she told him that she had conveyed to McCulloch a part of the harbor lots. He does not say, however, that she mentioned the deed to the Market street property.

The principal witness for the complainant, as to the admissions of Mrs. Oehme, is the father of the administrator, Mr. John H. Kase, who was interested in the administration of the estate in the manner already mentioned. His testimony is that he went to the house of the deceased, where Mrs. Oehme had lived with McCulloch (and where she still lives), to make an inventory, and had several talks with her. He says that, in one of these, which occurred one or two weeks after the letters of administration were taken out, these deeds were mentioned. He says that she told him that she had given a deed for the Market street property, but not a deed for all the harbor lots. He says he told her that his son had a power of attorney, from the heirs of McCulloch, to collect the rent of the Market street property, and that he wished to inform Ruckelshaus of all the facts, so that he would have no hesitation in paying the rent. He further says that he communicated these facts to Ruckelshaus, and, on one occasion, showed him the deed. He did this in response to an inquiry from Ruckelshaus, whether it was proper for him to pay over the rent to the agent of the heirs of McCulloch. Mr. Kase also expressly states that he never knew that Mrs. Oehme made a claim to the Market street property until the action of ejectment was brought by Mrs. Oehme to eject Ruckelshaus, on July 20th, 1884.

The testimony of Ruckelshaus is to the effect that, after the death of McCulloch, he had hesitated about paying his rent until assured that the heirs of McCulloch had the right to receive it. He supports the testimony of Mr. Kase that a deed was shown him, and that Mr. Kase repeated to him the conversation which he says he had with Mrs. Oehme. This is the substance of the testimony for the complainant upon this point.

The principal witness for the defence is John Eastwood. His

testimony goes to directly contradict the testimony of Kase, that he never knew that Mrs. Oehme made any claim to the Market street property until July 20th, 1884. Eastwood says that, in the beginning of the summer of 1883 he heard a conversation between Mr. Kase and Mrs. Oehme, in which conversation Mrs. Oehme repudiated the suggestion of Kase that she had parted with her interest in the Market street property.

His statement is this: He was passing the Second National bank, on his way to the railway station, to take a train for New York city. Mr. John H. Kase and Mrs. Oehme, he thinks, were standing near the bank door, and as he passed, Mrs. Oehme called to him. He said to her that he could not stop, because he was on his way to the train. He says that Mr. Kase and Mrs. Oehme were talking quite excitedly, and, as he gathered, about some rents which Mr. McCulloch had collected.

Mr. Kase said to her:

"'You know, Mrs. Oehme, that you do not own the property in Market street—the Ruckelshaus property;' her reply was, 'What do you say—I don't own that property?' he said, 'No, you don't;' and she said, 'Well, if I don't own it, I should like to know who does, and I will let you see who owns it before you get through with me.'"

The witness says that he then told Mrs. Oehme to go to a lawyer, and Mr. Kase acquiesced in this advice and said: "I will send you to a lawyer." She replied to Mr. Kase, "I will not go to any lawyer you recommend," and then asked Mr. Eastwood if he would recommend one, and Mr. Eastwood told her to go to Mr. Borcherling.

Mr. Borcherling, who was also sworn as a witness, says that Mrs. Oehme appeared at his office with Mr. Kase, obviously on the heels of the conversation above detailed.

I have now stated the substance of the testimony upon this phase of the case. It is perceived that the statement of Mr. Eastwood, if true, seems to be entirely destructive of the theory that Mrs. Oehme had acknowledged her deed in her interview with Mr. Kase, upon which fact the first element of estoppel rests, for it is incredible that she should have understandingly

recognized the genuineness of that deed in her interview with Mr. Kase in June, and then, about the same time, should have indignantly refuted his statement that ʹshe did not own the Market street property.

While Mr. Eastwood's testimony, when sworn upon a previous trial between the same parties, varied somewhat in details from his testimony here, it was, in substance, identical as to the recollection of the remarks of Mrs. Oehme concerning her title to the Market street property, Mr. Eastwood had no interest whatever in the matter, and while the repetition of the words of a conversation is always to be viewed with circumspection, it does not seem possible for him to have been mistaken as to the general import of this conversation in respect to the point in issue.

Neither had Mr. Kase any personal interest in the matter. He was only, for his son, representing the interests of the heirs. I think that he details what he recollects as the purport of his conversation with Mrs. Oehme. He naturally assumed that the deeds were all right. His recollection of his interview with her probably left an impression that he had specifically informed her of the character and effect of the deeds, while it may be that his reference to them was not such as to apprise her that these instruments conveyed away the specific property mentioned in them, and stripped her of her title to the Market street store. I have little doubt that he spoke to Ruckelshaus about the deeds, and told him that they were all right, nor do I doubt that he thought they were all right, and, at the time he gave his testimony, that he believed he had called Mrs. Oehme's attention to them, with the result which he stated. It may be that he did so, but I do not think, in the face of Mr. Eastwood's testimony, that this fact is proved. It seems more probable that, if he spoke of this deed at all, it was in so general a way that Mrs. Oehme did not realize what was claimed to be its effect.

Upon the first ground, namely, that Mrs. Oehme represented that the deed to McCulloch was genuine when she was informed that such statement was needed to convince Ruckelshaus that he should pay his rent to the agent of the heirs of McCulloch, I think that the complainant has failed.

The second ground, as already observed, does not depend upon any declaration made by Mrs. Oehme, but rests entirely upon her silence, when, as it is insisted, the circumstances put upon her the duty to speak.

The insistence is that it is proved that she was informed of the claim that she was disentitled to the Market street property, and that by a deed purporting to have been executed by her the record title was in the heirs of McCulloch; that upon being so informed she left Ruckelshaus in ignorance of the fact that she challenged the genuineness of the deed; that the result of such silence was to permit Ruckelshaus to pay his rent to those in whom the legal title apparently resided; that such payment to said heirs Mrs. Oehme should have reasonably anticipated as the natural result of her muteness. The facts conclusively established are these: It is shown by the defendant's own witness, Eastwood, that early in June, 1883, Mrs. Oehme was told that the Market street property did not belong to her. . It is proved that she immediately consulted Mr. Borcherling, and that Mr. Borcherling caused the records to be searched, and discovered the existence of two deeds, one of which deeds purported to be made by Mrs. Oehme, conveying to McCulloch the Market street property. It is proved that the ejectment suit was not begun until July of the following year, and that Ruckelshaus paid his rent, during this interval, to Mr. Kase as the agent of the heirs of McCulloch. It is proved that Ruckelshaus had been careful in his inquiry concerning the right of the heirs to receive the rent, and that he was induced to make such payment to them, by assurances from Mr. Kase and his counsel that title had been in McCulloch by force of the Oehme deeds. It is proved that, up to the time of the commencement of the ejectment suit, July 20th, 1884, he was never informed by Mrs. Oehme or by any other person that there was a cloud upon the title of the heirs. Once, according to the testimony of one witness, she in person collected the rent of her store, the next to one of Ruckelshaus', but neither at that time nor at any other time did she visit the complainant. All this time she is presumed to have been in communication with intelligent counsel; she must be presumed to have known,

as I have no doubt she was informed, that the record title of the property was in McCulloch just as the search of the record had disclosed; she must also have been presumed to have known that the rent belonged to the owner of the legal title, and that it would naturally be paid to those in whom the record showed such title. Had Mrs. Oehme, under these circumstances, stood by, while one of the payments was made by Mr. Ruckelshaus to Mr. Kase, and held her peace, I do not conceive that there could exist a doubt that she, by her silence, would have precluded herself from saying that such payment should be again made to her.

Yet, it seems to me that, under the conditions, the imputation to her of knowledge that the tenant would pay and was paying the rent to such agent, is nearly as strong as if she had personally witnessed the actual payment. Here, then, we have the duty to speak, the failure to speak, and the conduct of Ruckelshaus induced by her silence. This embodies all the elements of an *estoppel in pais.* Upon this phase of the case, I think the complainant has proved his case.

But the counsel for the defendant interposes another objection. They insist that, even if the facts be as I have found them, and even if it follows, as a legal inference from those facts, that the defendant is estopped, yet the complainant is not free at this time to avail himself of the estoppel.

This insistence is put upon the alleged existence of a counter-estoppel by record. It is argued that the record judgment, in the action for *mesne* profits, precludes the defendant from now setting up this *estoppel in pais.* The argument upon this point is, in brief, this: It is said that the facts set up in the bill were just as available as a defence in the action for *mesne* profits as it is now, as a ground for relief in this suit; that it follows that the judgment in that action, upon general principles, must be regarded as finally settling this point against the complainant; that while the court of errors, upon the face of the bill, held that the estoppel there pleaded was excepted from the operation of this general rule, yet the exception was put upon the ground that when such defence was proffered on the trial of the action at law, it was overruled by the trial justice as not a defence avail-

able at law, and that this ruling was acquiesced in by the complainant, who had no exception thereto sealed; that the court of errors held that the defendant in the action at law had the right to regard the ruling of the trial justice as the law of that case, and so reserved to himself his right to invoke this equitable remedy. It is argued, therefore, that the reservation of the right to come into this court rests entirely upon the fact that the ground upon which the present relief is asked was the ground tendered as a defence in the action at law, and was there overruled.

Now, the point made by the defendant is that there is not to be found in this case any evidence that the ground now relied upon was the same ground that was set up as a defence in said trial.

This seems to be true if we regard the testimony taken at the hearing, for in it there is nothing to disclose what the course of events was in the trial of the action at law in respect to this matter. But, upon referring to the bill, it will be found that, in setting up the scope and character of the defence offered at such trial, it is not only charged that the complainant offered to prove that Mr. Kase had been told by Mrs. Oehme that she had executed the deed to McCulloch, and that Kase had so informed Ruckelshaus, but it is charged that the defendant offered to show that Mrs. Oehme lived in the city of Newark until long after the commencement of the suit, and from the time of the making of the lease to Ruckelshaus, and not far distant from the property in question; that she was the owner of the adjoining property; that she personally visited the adjoining property frequently and collected the rents, and that she never, during all the time Ruckelshaus was paying rent to the McCulloch heirs, asked for any rent, made any inquiry in relation thereto, or made any inquiry about the premises in any way, or ever alluded to them in the slightest manner as her own.

This part of the charge in the bill was admitted by the answer, and it contained, in substance, the facts upon which the complainant now relies to establish the second ground of estoppel, namely, that she was silent when it was her duty to speak. No proof in the trial of the cause was essential.

The remaining question is in respect to the extent of the relief to which the complainant is entitled. By reason of the silence of Mrs. Oehme, he paid the rent to the agent of the McCulloch heirs from May 3d, 1883, to July 20th, 1884. That rent he was bound to pay to some one—either Mrs. Oehme or to the heirs of McCulloch. He is to be protected from being compelled to repay for any portion of this period.

So far as the present judgment includes the profits for this interval of time, its collection should be enjoined. The effect of the judgment in the suit for *mesne* profits is not, however, to compel a repayment of this entire amount. From the rental of $2,500 a year, which sum was fixed upon as the yearly value of the property, there was upon the trial, by consent, deducted the amount of certain payments for interest upon a mortgage and for taxes and repairs, which had been paid by Mr. Kase as the agent of the McCulloch heirs. The amount of the judgment represents the sum total of the amount which Ruckelshaus was bound to pay for that period, less the deductions made on account of the matters just mentioned. Ruckelshaus, therefore, will be fully protected against the consequences of Mrs. Oehme's conduct, by relieving him from the payment of that portion of the judgment which represents the annual value of the premises during the period mentioned, less the deductions allowed upon the trial. I think the deduction of the particular items paid by Mr. Kase should be applied at the time they were made, and all payments for interest, taxes and repairs made between the death of McCulloch and the commencement of the first ejectment suit should be deducted from the annual value of the property during that time, and the residue, with interest, should be regarded as the proportionate part of the judgment, from the payment of which Ruckelshaus should be discharged.

A decree will be advised in conformity with these conclusions.