WHEELER & WILSON MANUFACTURING COMPANY, complainant and appellant,

*v.*

SAMUEL LITWIN et ux., defendants and respondents.

[Filed March 7th, 1899.]

S. gave to L. $500 with which to purchase land for her. L. purchased land in his own name with the money thus given and with other money borrowed by himself on the security of the property. S. subsequently married L., who, having been sued before judgment recovered, conveyed the land to S. through O.—*Held*, that the conveyance might stand as security for $500 (that being the value of S.'s interest), and that beyond that it was fraudulent and void.

On appeal from a decree advised by Vice-Chancellor Stevens, who delivered the following opinion :

On December 2d, 1895, Samuel Litwin, as surety, joined with one Horwitz in a bond to complainant, the Wheeler & Wilson Manufacturing Company, conditioned for the faithful performance by Horwitz of his duties as its agent. Horwitz absconded shortly after this bond was executed, indebted to complainant. Thereupon complainant sued upon the bond, and on January 25th, 1896, recovered judgment in the district court. The judgment was docketed in the court of common pleas.

The present suit is brought to set aside a conveyance of land made on December 23d, 1895, by Samuel Litwin to one O'Hagan, and by O'Hagan to Litwin's wife, Sophie. The deed was made without consideration given at the time, and is fraudulent and void as against complainant unless the antecedent relations of the parties to the property were such as to have justified it. The facts relied upon in justification are these:

On March 15th, 1893, Samuel Litwin took a conveyance of a house and lot on Broome street, the consideration being $6,850. Of this consideration only $350 was paid in cash. The balance was secured by two mortgages—one for $4,500, given by Litwin

to a building loan association, and the other for $2,000, given by him to the vendor. The bonds given in each case were given by Litwin alone. On June 30th, 1894, he exchanged this property for property on William street. The consideration for the William street property was the Broome street property (subject to the above-mentioned mortgages), and, in addition, $150 in cash. The William street property was also encumbered by mortgages, one of which was made by Litwin. I think the evidence shows that the $350 paid on the first conveyance and the $150 paid on the second conveyance were the moneys of Sophie. She was engaged to Litwin when she gave him the moneys, but was not married to him until 1896.

The question in doubt is whether the money was lent to him in such manner that he merely became her debtor, or whether it was entrusted to him by her that he might purchase real estate for her, in which case she would have a resulting trust. It is difficult to come to a satisfactory conclusion on this subject. The parties concerned were of foreign birth, little education, young and inexperienced. They had no knowledge of the legal effect of their acts. In the view that I take of the case, the result would be very much the same either way. I am, however, inclined to think that Sophie entrusted Litwin with the money for the purpose of purchasing property for her. It was contended that if this were the true inference to be drawn from the facts a trust resulted as to the whole property. The argument was that the Broome street property was purchased for $6,850; that it was mortgaged for $5,500, and that, consequently, Sophie's money ($350) represented the entire value of the equity of redemption. This argument seems to me to be more plausible than sound. The evidence shows that Litwin borrowed from a building and loan association $4,500. This money was his when he borrowed it and his when he paid it to the owner of the property. Consequently, the interest acquired by it was his. In addition he gave to this owner his personal bond and a mortgage to secure the balance. The interest on the property to the extent of this bond must also have been his. It seems to me, therefore, plain that the trust resulting

to Sophie was only in an interest represented by the fraction $350/6850$. But in equity as between Sophie and Litwin there was this difference : Sophie's interest was clear ; Litwin's was mortgaged to its entire value. When the Broome street property was exchanged for the William street property Sophie's contribution, so far as the Broome street property was concerned, continued to be $350, there being no evidence of a change in its value, and she contributed in addition $150, so that the value of her interest in the William street property now became $500, while all of Litwin's interest was, as before, encumbered by mortgages which he either gave or assumed the payment of. The amount of these mortgages was subsequently reduced, but how, Litwin's testimony does not satisfactorily explain. If it was by compromise or by the use of rents it almost altogether redounded to Litwin's benefit, because it freed his interest from some portion of the encumbrances. I think that, to the extent of an interest in the equity of redemption equal to $500, Litwin's conveyance ought not, in equity, to be deemed fraudulent or without consideration. It was testified to by Sophie and Litwin that she gave him other money. As to the $500 already mentioned, it is certain it was derived either from Sophie's earnings or from Litwin's, and no one, I think, can read the evidence without concluding that it is more likely that it came from Sophie's than from Litwin's. She was more steadily employed and she lived with her father, who was able to support her. Litwin, on the other hand, supported himself, and seems to have had no steady or remunerative employment while unmarried. But it is difficult to believe that as much money was accumulated by Sophie as she testifies to, or that if put away by her father in his trunk, to the amount of $1,500, as he states, he would have consented to her lending so large a sum to a young man like Litwin, who had given no evidence of business ability, and absolutely without security.

The conveyance may stand as security for $500, which, I think, is all that the evidence will justify me in finding as the value of Sophie's interest. It will be declared fraudulent and void as to complainant with this reservation.

Wheeler & Wilson Mfg. Co. v. Litwin.

*Mr. John I. Weller*, for the appellant.

*Mr. Thomas Anderson*, for the respondents.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

VAN SYCKEL, J. (dissenting).

On the 2d of December, 1895, Litwin became surety on a bond given to Wheeler & Wilson, the complainants, and made oath on the bond that he owned property at No. 157 William street, Newark.

Judgment was recovered January 25th, 1896, by the complainants on this bond, but before judgment was entered Litwin, through a third person, conveyed the said property to his wife by deed dated December 23d, 1895.

The bill was filed to set aside this conveyance to the wife.

The vice-chancellor decided that the conveyance to the wife should stand as security to her for the sum of $500, which he found she had advanced to her husband to buy the property, and that it should be set aside subject to such lien for the benefit of the wife.

The case clearly shows that the wife knew when she furnished the money that the title to the property purchased was taken in the name of her husband, and it was permitted to remain in his name until a short time prior to the rendition of the aforesaid judgment.

In my judgment the decree is erroneous in preferring the wife to the creditor.

The wife put it in the power of the husband to defraud his creditor by holding himself out as the owner of the property. The creditor, in this case, relied upon the apparent ownership of the husband, and the wife is therefore estopped from setting up her claim. The cases are to that effect. *Ruckelschaus* v. *Oehme, 3 Dick. Ch. Rep. 436; Ruckelshaus* v. *Borcherling, 9 Dick. Ch. Rep. 345; affirmed, 10 Dick. Ch. Rep. 589.*

Chief-Justice Marshall, in *Sexton* v. *Wheaton, 8 Wheat. 229,*

declares the law to be that "a wife, who is herself the instrument of deception, or who contributes to its success by countenancing it, may with justice be charged with the consequences of her conduct."

In application of that well-established doctrine, it was held in *Besson* v. *Eveland, 11 C. E. Gr. 468,* and in *City National Bank* v. *Hamilton, 7 Stew. Eq. 158,* that if a wife permits her husband to take title to her lands and to hold himself out to the world as the owner of them, and to contract debts upon the credit of such ownership, she cannot afterwards, by taking title to herself, withdraw them from the reach of his creditors and thus defeat their claims.

For this reason I am constrained to dissent from the opinion of the court.

*For affirmance*—DEPUE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS—9.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, GUMMERE, NIXON, VREDENBURGH—5.