ABRAHAM J. GOLDSTEIN and DAVIS FINEBERG

*v.*

JEREMIAH CURTIS and KATE, his wife.

[Submitted April 23d, 1902. Decided May 24th, 1902.
Filed October 11th, 1902.]

The owner of land entered into a written contract to convey it for a sum of money, and was unable to perform his contract by reason of his wife's refusal to join in the conveyance, and thereupon was sued at law for damages for breach of it. The instrument provided for $350 of liquidated damages in case of failure by either party, and $200 had been paid on account of the purchase-money. Negotiations pending suit for a settlement resulted in a new contract executed by the husband and the wife, on the one side, and duly acknowledged by the latter in the same manner that a deed of conveyance is required by statute to be acknowledged, and the vendee on the other, to convey at a future day the same land and an additional lot, for a consideration named. On the day named the wife refused to acknowledge that she executed the deed freely, without any fear, threats or compulsion from her husband, and the deed was not delivered. Thereupon suit for specific performance was brought against the husband and wife, to which the wife set up two defences—first, that she had received no part of the money paid at the time of the signing of the contract, and hence that it was without consideration as to her; and, second, that a married woman cannot be compelled to specifically perform a contract, even when the execution of that contract has been duly acknowledged by her.—*Held,* (1) that the injury which the wife would pre-

sumably suffer by the damages recoverable against her husband for the breach of the first contract, and the presumption that she stipulated with her husband for a part of the consideration to be paid upon the delivery of the deed, and her ability to share in those proceeds, furnished a sufficient consideration ; (2) that the acknowledgment of a contract for sale by a married woman is authorized by the act of 1898 (*P. L. of 1898 p. 670*), and that by force of that act a contract so acknowledged by a wife is binding upon her in equity ; (3) that the decree for specific performance will be self-executing and pass the title free and clear of the dower of the wife, without the acknowledgment of any conveyance by her ; (4) at the date fixed for executing the second contract the wife stated to the officer who proposed to take her acknowledgment that she had not executed the deed under fear, threats or compulsion of her husband, but that she did not do it freely, whereupon the officer declined to sign the ordinary certificate.— *Held*, that the officer would be justified in certifying that she had acknowledged it freely, without any fear, threats or compulsion from her husband.

On bill, answer and proofs in open court.

This is a suit by vendees against vendors for the specific performance of a contract, under seal, to convey land, and for an accounting of the rents of the same from its date according to the terms thereof.

The contract was entered into on the 10th of July, 1901, between the two complainants, Goldstein and Fineberg, as vendees, and the two defendants, Curtis and his wife, as vendors; and it covers three lots of land, with the improvements thereon, situate on the northerly side of Essex street, in Jersey City, and known as Nos. 144, 146 and 148 Essex street, together with the right, title and interest of the defendants in certain lands and buildings adjoining No. 148 on the west. The consideration named is $8,026, of which $200 was paid down and $7,826 was to be paid on the 1st day of August next ensuing. There was a provision that the vendees should be entitled to receive the rents of the property from the date of the agreement, and that the vendors would account for the rents, at the delivery of the deed, up to that time, and also turn over the policies of insurance covering the buildings.

The instrument is under seal, and was acknowledged by all the parties before Mr. Fisk, as master in chancery, who certified that the wife, being privately examined, separate and apart from

her husband, thereupon acknowledged that she signed, sealed and delivered the same as her voluntary act and deed, freely, without any fear, threats or compulsion of her husband.

The complainants were ready and willing and tendered themselves ready to perform the contract on their part, to wit, the payment of $7,826 on the day named, and the defendant Curtis, who holds the fee, proffered himself willing to execute the conveyance, but his wife declined to join therein in such manner as to bar her dower. She stated to Mr. Fisk, who acted as counsel for the defendants, that while she had no 'objection to acknowledging that she executed the deed without any fear, threats or compulsion of her husband—in fact, repudiated any fear or compulsion on his part—she was not willing to acknowledge that she executed it *freely.* Hence Mr. Fisk declined to certify the acknowledgment, and the sale fell through.

The facts leading up to the execution of the contract, as shown by the evidence, are as follows: On the previous 22d of October the defendant Curtis alone had entered into a contract with the complainants to convey to them, for the sum of $6,000, Nos. 144 and 146 Essex street, by deed to be delivered on the 15th of January next ensuing.

The covenant in that contract was "to well and sufficiently convey to the said party of the second part, their heirs and assigns, by deed of full covenant warranty, free from all encumbrance." It also contained a provision that in case of the failure to fulfil the same, the party failing should pay the sum of $350 as liquidated damages.

On the day named for the performance of that contract the complainants were ready to pay the purchase-price, and Mr. Curtis was ready to convey, but declared that he could not—and he did not, in fact—procure his wife to join in the conveyance. Whereupon the complainants declined to accept the deed; and thereafter, to wit, on the 4th of April, 1901, commenced an action against Mr. Curtis to recover the liquidated damages mentioned in that contract.

Mr. Curtis employed Mr. Fisk to defend that action. No plea, however, was put in, but further time to plead was obtained from the attorney of the complainants, and negotiations for a

settlement were entered into. In those negotiations the wife of Curtis took part, and they resulted in an offer, on the part of Curtis, of which his wife was cognizant, to settle that suit by conveying all three of the lots, Nos. 144, 146 and 148, with an uncertain interest in some premises adjoining No. 148, for the sum of $8,000. Those negotiations resulted in the execution of the contract upon which this suit is based; and coincident with its execution the suit based on the prior contract was discontinued.

In preparation for the fulfilment of their contract to pay the purchase-money the complainants incurred the expense of examining the title to the property and negotiating and paying a premium for a loan sufficient for that purpose from a building loan association.

The covenant sought to be enforced is in these words:

"The said parties of the first part [Curtis and his wife], in consideration of the sum of $200 to them duly paid, hereby agree to sell unto the said parties of the second part [the complainants] ;"

then follows a description of the premises; then comes a covenant, on the part of complainants, the vendees, to pay the said sum, and then this covenant:

"And the said parties of the first part [Curtis and wife], on receiving such payment at the time and in the manner above mentioned, shall at their own proper cost and expense, execute, acknowledge and deliver to the said parties of the second part, or to their assigns, a proper deed for the conveying and assuring to them the fee-simple of the said premises, free from all encumbrance, which deed shall contain a general warranty and the usual full covenants."

*Mr. James R. Bowen,* for the complainants.

*Mr. Willard C. Fisk,* for the defendant Jeremiah Curtis.

*Mr. William R. Barricklo,* for the defendant Kate Curtis.

PITNEY, V. C.

Four defences are set up:

First, that the wife was not aware that the contract covered

both pieces of property, but that she supposed that it covered only the first piece, the subject of the first contract of sale, and for that reason she ought not to be compelled to specifically perform it.

I think this defence entirely fails. Her husband was sued on the previous contract, which provided for liquidated damages, and was liable to have a judgment entered against him. He obtained the aid of competent and faithful counsel, and through that counsel sought a settlement of that suit. It appears that the wife visited that counsel with her husband; that she took part in the preliminary negotiations; that the contract here sought to be enforced was prepared by that counsel, and that the contents were fully made known to her by him, and that she signed and acknowledged it, according to the statute, before that counsel as master. It is quite impossible, under these circumstances, to believe that she was unaware that the additional lot was included in the present contract.

The next defence set up is want of any consideration paid to her. The consideration for entering into the contract was the $200 paid on the previous contract and the discontinuance of the suit pending on the previous contract, which called for liquidated damages to the extent of $350, besides the costs.

No consideration was paid directly to the wife, but she had a perfect right to stipulate with the husband, if she chose so to do, that a certain part of the final consideration-money of several thousand dollars to be received by him should be given to her; and the inference from all the circumstances would be that she had stipulated for some such consideration if she required it. Moreover, as a wife, she was interested in the welfare of her husband. Presumably she would suffer by his being condemned in damages and costs for the non-performance of the first contract. Further, no pecuniary consideration is necessary in order to support such a contract. This defence fails.

The third defence is that the consideration agreed to be paid is inadequate. The property subject to the contract is what is known as tenement-house property, and some testimony was given as to its rental value. But no satisfactory evidence was given as to the cost of repairs, maintenance, taxes and the like.

The defendants, in making the contract, acted advisedly, and not hastily. No advantage was taken of them in any respect. The offer to settle the previous suit by this new contract was made by them, and was accepted by the complainants reluctantly. If, as alleged, the first contract was unconscionable, they had only to pay the $350 to escape the effect of their folly. This defence fails.

. The fourth defence, and the one mainly relied upon, and which raises the only serious question in the case, is whether a married woman can be compelled by the court of chancery to specifically perform a contract, entered into with her husband and duly acknowledged by her as a married woman, to convey lands in which she has a dower interest.

The question, so far as I know, has never been squarely presented and decided in New Jersey. The subject was dealt with elaborately by Vice-Chancellor Stevens, in the case of *Corby* v. *Drew, 10 Dick. Ch. Rep. 387.* The law, as left by him, may be stated in this wise: The three statutes then in force relating to the rights and obligations of married women as to their interest in land, taken together, provided that a married woman had the right to contract concerning her property, including land, the same as if she were *feme sole,* subject, however, to the statutory exception that she could not convey land without her husband joining with her therein, except in certain cases stated; and further, that she could not convey land without acknowledging the conveyance before a proper officer in the mode prescribed in the statute.

The result was that Vice-Chancellor Stevens held that where a married woman had entered into such a contract with her husband, which contract, however, was not acknowledged by her before a proper officer separate and apart from her husband, she could not be compelled to specifically perform that contract.

The precise question here presented was not before Vice-Chancellor Stevens, because, as I have said, the married woman in that case had not acknowledged the contract separate and apart from her husband before a proper acknowledging officer.

Since the decision in *Corby* v. *Drew* the "Act concerning conveyances" has been revised, as found in *P. L. of 1898 p. 670.*

Goldstein *v.* Curtis.

Section 21 of that act (at *p. 677*) enumerates the different classes of contracts relating to land which may be acknowledged or proven and recorded.

Section 39 (at *p. 685*) relates to the rights of a *feme covert* in land, and is in the following language:

"No estate or interest of a *feme covert* in any lands, tenements or hereditaments, lying and being in this state, shall hereafter pass by her deed or conveyance, without a previous acknowledgment made by her on a private examination, apart from her husband, before one of the officers mentioned in the twenty-second, twenty-third and twenty-fourth sections of this act, as the case may be, that she signed, sealed and delivered the same as her voluntary act and deed, freely, without any fear, threats or compulsion of her husband, and a certificate thereof written on, or under, or annexed to the said deed or conveyance, and signed by the officer before whom it was made; and further, every deed or conveyance, heretofore or hereafter so executed and acknowledged, by a *feme covert,* and certified as aforesaid, shall release and bar her right of dower, *and every deed or instrument of the nature or description set forth in the twenty-first section of this act, heretofore or hereafter executed by her and so acknowledged and certified as aforesaid, shall be good and effectual to convey or affect the lands,* tenements or hereditaments, or other property, or her interest therein, thereby intended to be conveyed or affected; provided, that this clause shall not be construed to enable any *feme covert* under the age of twenty-one years to convey or affect her lands, tenements or hereditaments, or other property, or any right of dower, interest or estate therein."

The language of this statute, it is seen, is broader than that previously regulating that subject, which is section 9 of the "Act concerning conveyances." *Gen. Stat. 1895 p. 854.* The additional words are these:

"And every deed or instrument of the nature or description set forth in the *twenty-first* section of this act, heretofore or hereafter executed by her and so acknowledged and certified as aforesaid, shall be good and effectual to convey *or affect* the lands, tenements or hereditaments or other property, or her interest therein, thereby intended to be conveyed or affected."

Among the instruments mentioned in the twenty-first section, so referred to, is "agreements for sale."

If any doubt existed under the law as it stood at the time *Corby* v. *Drew* was decided as to the effect of a contract to con-

Goldstein *v.* Curtis.

vey lands entered into by a married woman with her husband and duly acknowledged by her, that doubt seems to me to be clearly removed by the thirty-ninth section of the act of 1898, which, as we have seen, expressly provides that agreements for sale duly acknowledged by the wife

"shall be good and effectual to convey *or affect* the lands, tenements or hereditaments, or other property, or her interest therein, thereby intended to be conveyed or affected."

Now, a familiar way to "affect" the interest of a person in land is to contract to convey it, and the only mode in which such a contract can be made "good and effectual" is to compel its specific performance by a decree of this court.

But it is argued that this court is asked to compel a married woman to execute and acknowledge a deed, and declare before the acknowledging officer that she signed, sealed and delivered the same as her voluntary act and deed, *freely,* without any fear, threats or compulsion of her husband. There is nothing in this objection. As pointed out in *Fee* v. *Sharkey, 14 Dick. Ch. Rep. 284* (at *p. 292*); *S. C. on appeal, 15 Dick. Ch. Rep. 446,* the decree of this court executes itself.

By her contract, under the statute of 1898, the defendant Mrs. Curtis came under an obligation, enforceable in a court of equity, to join her husband in a conveyance of this land. Her obligation does not differ in character, though it does in origin, from that of the married women defendants in the case of *Fee* v. *Sharkey;* and if she executes the deed without acknowledging it, I am of the opinion that the title will be perfectly good, because made in obedience to a decree of this court.

And here I feel constrained to remark that I think much doubt may be suggested as to the accuracy of the interpretation of the statutory requisition applicable to the execution of conveyances by married women which Mr. Fisk seems to have adopted in refusing to certify Mrs. Curtis' acknowledgment to the deed prepared by him to be given under the contract now sought to be enforced, because she would not acknowledge that she executed it *"freely,"* though disavowing any fear, compul-

Goldstein *v.* Curtis.

sion or other influence on the part of her husband. My understanding of the force of the word "freely" in that connection is that it relates entirely ·to the relation between the husband and wife, and indicates a condition of freedom, on her part, from the influence of her husband, and not of freedom from the obligation of a contract or other duty. If I am right in this, Mr. Fisk would have been quite justified in certifying to her acknowledgment.

I also call attention to the former condition of the law in England on this subject, by reference to a collection of the authorities in a learned note to an article on the subject of "Specific Performance of Contracts" in *41 Am. Law Reg. (N. S.) 259 (May, 1902)*.

The simple common sense of the thing is that the wife has ˙once acknowledged, in the manner required by law, an instrument in writing releasing her dower in equity in the land involved in this suit, and there is no necessity, in order to validate the title, for her making that acknowledgment a second time.

The contract under consideration is fair in all its parts. It bound both parties to it, and I see no reason why it should not be enforced.

I will advise a decree for complainants, with costs to be paid by the defendants and deducted from the purchase-price.

The decree may contain a provision that the conveyance shall be delivered and the purchase-money paid and other matters liable to lead to dispute be adjusted by the parties in the presence and under the supervision of one of the masters of this court, if the parties cannot carry it out privately.