Bristol v. Skerry.

ANNA C. BRISTOL and SAMUEL A. BRISTOL, her husband,

v.

AMORY T. SKERRY et al.

[Filed February 16th, 1903.]

1. Since the passage of section 11 of the Married Woman's act (*Gen. Stat. p. 2014 § 11*), a wife may bring a suit for the protection of her property, in her own name, without joining her husband as a party to

the suit.  This statute enables the wife to sue as a *feme sole*, but does not require her to do so.  If she desires to make her husband a party to the suit she must follow the mode of procedure observed before the adoption of section 11 and sue by her next friend, making her husband a defendant.

2. A husband has an equity in lands to which his wife holds title, which this court will recognize.  He has power, by refusing to join in her deed, to prevent her from conveying her lands, and if a child be born during .the coverture and the husband survives the wife, he will take an estate by the curtesy (complete) in lands whereof she died seized of an estate of inheritance.

3. Having this equity he is a proper party to a suit brought by the wife to protect her lands.  It is, however, misjoinder to make him co-complainant with his wife.  If he is made a party, it should be as defendant.

On demurrer to bill for misjoinder.

*Mr. William A. Stryker,* for the demurrant.

*Messrs. Smith & Brady,* for the complainant.

GREY, V. C.

The bill in this case is filed by Anna C. Bristol and Samuel A., her husband, alleging that Anna is the sole owner in fee-simple of a farm in Hunterdon county.  The bill charges that the defendants, by increasing the height of their mill dam, have caused the natural flow of a river to be checked, and the waters thereof to .flow back upon the lands of the complainant wife, to the continuous and permanent injury of her lands. The defendants demur to the bill because the husband, Samuel A. Bristol, is made a party complainant, when it does not appear anywhere in the bill that he has any interest in the matters in dispute.  This is the sole ground upon which the demurrer was argued.

. Before the passage of the Married Woman's act of 1852 a married woman might have been interested in lands in two different ways.  She might have had the legal title to land come to her by deed, devise or descent.  In land of which his wife became so seized of an estate of inheritance, the husband was instantly vested of an estate by the curtesy initiate.  The wife's

property became liable to be taken for the payment of the husband's debts, and also to his disposition, for he could convey his wife's lands, at least, during the coverture, and in case a child was born, and the husband survived the wife, during his life.

The obvious inequity of this situation led to the creation of a peculiar equitable interest for the protection of the wife from the distresses occasioned by the rigid rules of the common law. This was the other way in which a wife might, before the act of 1852, have an interest in lands. This interest originated by marriage settlement, by deed or by devise. The title to the land was held by a trustee for the benefit and separate use of the wife. Powers were created enabling her, by her individual act, without her husband, to deal with the land thus held for her use. She was deemed to be, with respect to such property, a *feme sole.* Her interest in the lands so set apart for her was controlled, not by the common law applicable to legal titles, but by the terms of the trust which gave it for her benefit. It was called her separate estate. Her own action taken in protection of such property, and also attacks made upon it by others, were within the cognizance of the equity courts. *Tullett* v. *Armstrong, 1 Beav. 21.* A caustic review of the origin and growth of this separate estate of the wife, from the point of view of a common law jurist, may be found in the opinion of Chief-Justice Beasley, speaking for the court of errors and appeals, in the case of *Perkins* v. *Elliott, 8 C. E. Gr. 527.*

While this was the state of the law, a husband, who might have had an estate by the curtesy initiate, in lands wherein his wife held title, was held to be a necessary party to any bill filed respecting lands which were the separate estate of the wife. The mode of procedure then was, that the wife, when seeking to protect her separate property, sued by her next friend, making her husband a party defendant, in order that he might contest, if he wished, her claim that the lands in question were in fact her separate property, and show her claim to be incompatible with his marital rights, for she might have held the title, and the husband would then have had a curtesy. *Story Eq. Pl.* § *63; Sigel* v. *Phelps, 7 Sim. 239; Wake* v. *Parker, 2 Keen 59.*

Sir John Leach, in *Smith* v. *Myers, 3 Mad. 475,* in a suit

where a wife had a separate estate, and had sued, naming her husband as next friend, granted a motion made by the plaintiff to strike out the name of a husband as next friend and make him a co-plaintiff, declaring that although the wife's claim to separate property was against *jus mariti,* yet the husband, by joining as co-plaintiff, would admit the statement in the bill that the property in question was the separate property of the wife, and that this would answer all the purposes of making him a defendant. Under the earlier cases a bill filed by husband and wife as co-complainants, was held to be the suit of the husband alone, and the wife was not bound by any of the allegations in such a bill in any future litigation. See, in *Johnson* v. *Vail, 1 McCart. 426 (1862),* and cases cited, an interesting discussion of the subject by Chancellor Green.

In 1852 the Married Woman's act destroyed the common law estate of tenancy by the curtesy initiate. *Porch* v. *Fries, 3 C. E. Gr. 208 (1867).* But as it gave the wife no power to dispose of her lands without the husband's joining in her deed, the husband's estate by the curtesy might still arise, upon her death, seized of an estate of inheritance, a child having been born of the marriage. *Porch* v. *Fries, 3 C. E. Gr. 209; Naylor* v. *Field, 5 Dutch. 292 (1861).*

Since the passage of the Married Woman's act of 1852, making lands, the legal title to which stands in the wife's name, free from the husband's control or debts, such property has also come to be designated the "separate estate," of the wife.

Although the Married Woman's act of 1852 destroyed the husband's estate by the curtesy initiate, in lands wherein his wife held title, he yet has control over her disposition of those lands, for she has no power to convey them unless he joins in her deed, and he still has a possibility that a child may be born of the marriage, and that he may survive his wife and thus become seized of an estate by the curtesy complete. Since the passage of that act, the husband has been declared to be a necessary party to a suit begun by a wife through a next friend for her separate estate. Objection was made to the non-joinder of the husband, and it was declared to be well taken (*Tunnard* v. *Littell, 3 C. E. Gr. 269 (1872),* following *Johnson* v. *Vail, ubi*

*supra*), holding that the husband is a necessary defendant. The husband's interest, even in the distinctly separate estate of the ·wife, was in these cases held to be sufficient to make the wife's suit defective unless he was made a party defendant.

In *Johnson* v. *Vail* the husband appeared as next friend of the wife, but was not joined as a party in the bill, either as complainant or defendant. The case was presented on an order to show cause why an injunction should not issue, &c. It was held that although the husband was a necessary party, it would be a misjoinder to make him a plaintiff, and that he must therefore be made a defendant. In *Barrett* v. *Doughty, 10 C. E. Gr. 379 (1874)* the bill was filed by husband and wife as co-complainants, a demurrer *ore tenus,* because of the misjoinder of the husband as complainant, was allowed, and it was ordered that he be made a defendant. In *Tantum* v. *Coleman, 11 C. E. Gr. 131 (1875)*, to a bill filed by a wife, a plea setting up the coverture and the non-joinder of the husband as complainant was held to be bad, because he was neither a necessary nor a proper party complainant with her. In *Paulison* v. *Van Iderstine, 1 Stew. Eq. 310 (1877)*, a bill by husband and wife as co-complainants, filed in respect to the wife's separate estate, was held to be a misjoinder.

The uniform course of decision up to the year 1877, in cases such as that presently under consideration, declares that the husband was a necessary party, but that it was a misjoinder to make him a co-complainant with his wife. He must be made a defendant.

While this was the state of the law the revision of the Married Woman's act (*Rev. 1877 p. 638 § 11, now Gen. Stat. p. 2014 § 11*) was enacted. This statute enables a married woman to maintain an action in her own name without joining her husband therein, for the recovery of all damages done to her separate property, and gives her the same remedy for the protection of such property as if she were an unmarried woman, and declares that in any proceedings it should be sufficient to allege such property to be her property. Since this statute, it has been held that the husband is not a necessary party to a suit brought by a wife to protect her property, and demurrers to bills of

complaint filed by the wife because of the non-joinder of her husband as a party in such suits have been overruled. *Castner* v. *Sliker, 16 Stew. Eq. 9 (1887)*; *Young* v. *Young, 18 Stew. Eq. 41 (1889)*.

The reasons for holding the association of the husband with the wife as co-complainant to be misjoinder, have been somewhat shaken by the effect of the statute of 1852, which destroyed the husband's estate by the curtesy initiate in lands to which the wife held title, and thus left him less ground of dispute with his wife as to whether the lands affected by her suit were in fact her separate property, held in trust for her, or lands to which she held title. The cases of *Johnson* v. *Vail*, *Barrett* v. *Doughty* and *Paulison* v. *Van Iderstine, ubi supra,* decided after the act of 1852, however, all hold that it is a misjoinder to associate the husband as co-complainant with the wife in a suit to protect lands owned by her.

The grant of power to the wife to sue alone, without joining her husband in her suit, given by section 11 of the revision of 1877 (now *Gen. Stat. p. 2014 § 11*), if acted upon by the wife, by suing alone, would seem to relieve the procedure from the presumption above referred to, which held a suit brought by husband and wife to be the suit of the husband only and not binding on the wife.

The power given to the wife by section 11 is, however, a mere enabling act. She is empowered, but not required, to sue in her own name, without making her husband a party. If she sues without him she may do so in her own name as sole complainant, under the power given her by section 11. If she desires to make him a party she must follow the practice established by the modes of procedure in such cases before the enactment of section 11, and sue by her next friend, making her husband a party defendant.

It is claimed by the demurrant that the husband has no interest in the subject-matter of the suit, and that he cannot properly be a party to it. This view cannot be accepted. The statutes of 1852 and 1877 did not deprive the husband of all interest in his wife's property. They secured its enjoyment to her and enabled her to sue as a *feme sole* to protect it, but he still has

an equity which this court will recognize, and which makes him, though not a necessary, yet a proper party to his wife's suit. He still has power to prevent his wife from conveying her lands, for her deed made without his joining in it is a nullity. If a child be born during the coverture, and the husband survives his wife, he will yet take in them an estate by the curtesy complete. If his wife succeeds in this suit the permanent value of her lands, and consequently of the husband's possible interest, will be increased. If she fails, the value of the husband's equity may be lessened. Equity has recognized his interest as worthy of its protection. In *Speakman* v. *Tatem, 3 Dick. Ch. Rep. 136* (affirmed on appeal), a husband had joined a wife in conveying her lands to a trustee. His marital right in her real estate thus conveyed was held to form a sufficient consideration for a post-nuptial settlement, by which an interest was secured to the husband, and his rights under that settlement were enforced.

The practice since the Married Woman's act of 1852 seems to be established, that in a suit for the protection of a married woman's property, her husband should not be joined with her as a co-complainant. *Johnson* v. *Vail,* and cases above cited.

The husband is not a necessary party to such a suit since the revision of 1877, but he is a proper party defendant by reason of his interest in the subject-matter of the suit.

The demurrer must therefore be sustained on the ground of the misjoinder of the husband as co-complainant with his wife, with costs to the defendant, and leave to the complainant wife to amend by striking out the name of the husband as complainant. If she wishes to make her husband a party it must be as a defendant, and in such case the suit must be in the name of her next friend as complainant.